**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

KRYSANNE KATSOOLIS
AND FIVE ZOO CONCEPTS & DESIGN INC.

        Plaintiffs.        :        **FILED ELECTRONICALLY**

    -- against --    :    **1:18-CV-09382**

        :    **COMPLAINT**

LIQUID MEDIA GROUP, LTD.,    :    **JURY TRIAL DEMANDED**
DANIEL CRUZ, CHARLES BREZER, AND
JOSHUA JACKSON.

        Defendants.    :

---------------------------------------------------------------x

<u>COMPLAINT</u>

Krysanne Katsoolis ("Plaintiff") and Five Zoo Concepts & Design, Inc. ("Plaintiff Five Zoo") (hereinafter collectively "Plaintiffs") allege the following upon information and belief as to the acts of others. As to their own actions, they allege the following upon personal belief:

<u>PRELIMINARY STATEMENT</u>

1.      Plaintiff is a veteran media industry Business Affairs & Acquisitions executive. She obtained her Master of Laws as a Fulbright Scholar from Columbia Law School in 1992. Until recently, Plaintiff was the only female member of Defendant Liquid Media Group, Ltd.'s ("Liquid") Board of Directors and was the company's CEO. Earlier this year, she resigned her board position under protest and was terminated as CEO without "just and sufficient" cause. Ironically, Plaintiff remains "President."

2.      But this title is empty window dressing. She still hasn't been paid over $1,000,000.00 for her 2017 and 2018 CEO services to Liquid.

3.      This is so, even though, Plaintiff was retained as CEO and Director pursuant to an Independent Contract ("2017 Contract") between Defendant Liquid Media Group, Ltd. ("Defendant Liquid" or "Liquid") and Plaintiff Five Zoo. The 2017 Contract required Plaintiff Five Zoo to be paid $10,000.00 a month for Plaintiff's services. She duly performed her 2017 duties to Liquid but Five Zoo has yet to be paid $20,000.00 in compensation and $2,584.00 in expenses. What is more, Plaintiff is still owed 25,000.00 CAD ($19,334.12 USD at today's exchange rate) for services rendered to Defendant Liquid, totaling $41,918.12 due to Plaintiffs for 2017.

4.      Similarly, Plaintiff and Liquid entered into an Employment Agreement ("2018 Contract") on or about January 1, 2018. The 2018 Contract requires Liquid to pay Plaintiff a $400,000.00 salary for her CEO services. It also requires Liquid to pay Plaintiff at $1,000,000.00 severance in the event she is terminated without "just and sufficient cause." To date, she has performed such duties to Liquid, engendering statements from Defendant Brezer such as "love it all great." Notwithstanding, on August 14, 2018, he instructed Plaintiff to sign off on a total of $724,487.28 owed to various creditors, including Defendant Joshua Jackson, while omitting Plaintiff's 2018 CEO compensation and expenses totaling $3,106.09.

5.      The foregoing injuries spawn from Liquid's hostile and discriminatory work environment. When Plaintiff approached Defendant Joshua Jackson in or about December 2017 about obtaining an office in New York, he gave her an ultimatum: office or salary. In the same breath, Defendant Jackson had already approved the hiring of a male TV executive in Los

Angeles for a yearly salary of $500,000.00 in addition to an office. Defendant Jackson said this was "reasonable" during a subsequent board meeting.

6.      During a phone call with a shareholder located in New York City in or about April of 2018, Defendant Daniel Cruz maliciously defamed Plaintiff. He told the shareholder that Plaintiff was having a "love affair" with a counterparty to a contract with Liquid, that she had "gone rogue" in light of her unauthorized dealings with such counterparty, and that the relationship was otherwise "suspicious." The truth: numerous e-mails from Defendant Brezer gave Plaintiff actual authority to deal as CEO of Liquid with the counterparty.  That's why, on April 6, 2018, Plaintiff even sent a text to Defendant Jackson about Defendant Cruz's "toxic . . . communication[s] from your buddy Daniel." Jackson ignored the text. This was in addition to ignoring numerous voicemails to him from Plaintiff throughout the year about Defendant Cruz's harassing behavior.

7.      As a further effect of the foregoing discriminatory and hostile environment, Defendants intended to terminate Plaintiff as CEO without "just and sufficient cause" during a board meeting on or about March 20, 2018. As evidence, a May 23, 2018 draft of the press release announcing this move from Defendant Brezer to Plaintiff was titled *"Termination of Krysanne."* (Emphasis added.) This is notwithstanding the fact that Plaintiff had called upon her extensive contacts in the entertainment industry to bring in several substantial investments into Liquid totaling approximately $460,000.00 in 2017 alone and had otherwise performed her CEO duties throughout 2018. Consequently, Plaintiff is entitled to the $1,000,000.00 severance in the 2018 Contract.

8.      Plaintiff sought to resolve outstanding issues with Liquid on or about September 7, 2018. However, Mr. Stephen Jackson, a new board member of Defendant, represented to

Plaintiff's counsel that "I recall that I had been advised that there may not be significant funds available" to satisfy Defendant Liquid's obligations to Plaintiff. Other members of Liquid, including Defendant Brezer, have also consistently represented to Plaintiff throughout 2018 that they were undercapitalized and unable to satisfy their obligations to her. On top of this, corporate formalities weren't honored by the individual defendants when purporting to run Defendant Liquid, further evidencing that the company acted as their "alter ego."

9.      Consequently, Plaintiffs were forced to file this lawsuit.

10.     Plaintiffs bring this action for the following: (1) breach of contract against Defendant Liquid, for which Plaintiff Katsoolis seeks compensatory damages totaling $1,311,690.87, (2) defamation against Defendant Cruz for compensatory damages of $1,311,690.87 and punitive damages of $9,181,836.09, and (3) violation of New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 – 8-131 against all Defendants, who aided and abetted one another, for which Plaintiff Katsoolis seeks compensatory damages of $1,311,690.87 and punitive damages of $9,181,836.09.

11.     The foregoing factual allegations are supported below.

## PARTIES

12.     Plaintiff is a resident of New York City and Plaintiff Five Zoo is a New York corporation. Since graduating from Columbia Law School in 1992, Plaintiff has had an extensive career in the entertainment industry, including as director of Plaintiff Five Zoo. After law school, she became Manager of Business & Legal Affairs at Miramax Film Corp. Plaintiff then moved onto a Senior Vice President position of acquisitions at Fox Lorber Inc.  More recently, she was a partner at Cactus Three Entertainment, responsible for the production of films including *The*

*March*, *Afternoon of a Faun*, and the Academy Award winning film *The Cove*. *See* https://www.linkedin.com/in/krysanne-katsoolis-563490b8/.

13.     Defendant Liquid Media Group, Ltd. (f/k/a "Leading Brands, Inc."), is a Canadian concern with offices in New York City and Canada. Liquid's New York City address is 53 West 36ᵗʰ Street, Suite 205, New York, NY 10018. The company's Canadian address is 33 West 8ᵗʰ Avenue, Vancouver, British Columbia, V5Y 1M8. Liquid is listed on NASDAQ under "YVR." As will be more fully illustrated below, whilst Liquid maintains it has no assets with which to compensate Plaintiff, the company acquired a fifty-one (51%) stake in Majesco Entertainment Company on or about January 15, 2018, around the time Liquid completed preferred share financing worth $4,000,000.00.

14.     Leading Brands, Inc. ("Leading Brands") is a Canadian corporation. On or about September 17, 2017, Liquid and Leading Brands, which was listed on NASDAQ under the symbol "LBIX," did a reverse merger per an "Original Arrangement Agreement."  However, Liquid and Leading Brands amended their arrangement on or about January 15, 2018. *See* https://www.sec.gov/Archives/edgar/data/884247/000119312518181963/d409843dex43.htm. Pursuant to that amendment, Leading Brands shareholders took 25.8% of the "post transaction entity" whereas Liquid shareholders would own 74.2%. As the Court will see from reviewing the foregoing link, the January 15, 2018 amended arrangement is signed on behalf of Liquid by Plaintiff as "Chief Executive Officer."

15.     Defendant Daniel Cruz is CFO, VP of Finance, and a member of the board of directors of Defendant Liquid.  He is a resident of British Columbia. During the relevant time period above, he was a director of Defendant Liquid. He has traveled to and otherwise conducted Liquid business in this District, including to meet with Plaintiff.

16.     Defendant Charles Brezer is, upon information and belief, the current CEO of Liquid. Defendant Brezer is a resident of British Columbia. Upon information and belief, he is married to Mrs. Devonna Gaglardi, who is the half-sister of Mr. Thomas Gaglardi. He resigned as a Director of Leading Brands on or about July 19, 2018. During the relevant time period, Defendant Brezer has travelled to or otherwise conducted Liquid business in this District, including for Liquid related meetings.

17.     Defendant Joshua Jackson is the Chairman of Liquid in addition to being a board member. In addition to the foregoing, Defendant Jackson is an actor, producer, and director. He has starred in shows such as *Dawson's Creek*. He currently resides in Los Angeles, California. During the relevant time period, Defendant Jackson has travelled to this District to conduct meetings at Liquid's office with Plaintiff.

**JURISDICTION AND VENUE**

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a).

19.     As for personal jurisdiction, this Court has it pursuant to CPLR §302(a)(1), (2), or, in the alternative, (3).

20.     As mentioned above, Defendant Liquid maintains an office in Manhattan.

21.     The remaining individual defendants have purposely availed themselves of New York's long-arm jurisdiction. They have done business with and discriminated against Plaintiff, who they knew from various correspondence was a New York City resident, within this District. In addition, Defendant Cruz defamed Plaintiff either within this District or beyond the District's borders.  Plaintiff's defamatory injuries were sustained here given the shareholder with whom Defendant Cruz spoke about Plaintiff has an office in Manhattan. In addition, a substantial relationship existed between Defendant Cruz's *per se* defamation and his transaction of Liquid

business with Plaintiff within this District. That's because Defendant Cruz has travelled here to have meetings with Plaintiff, the shareholder to whom he relayed the defamation, and a third party who wished to do business with Defendant Liquid's Manhattan office.

## FACTUAL ALLEGATIONS

### A.      Breach of Contract

#### i.      2017

22.      Per the 2017 Contract executed by Plaintiff Five Zoo and Defendant Liquid, Plaintiff was entitled to a monthly salary of $10,000.00, exclusive of costs and expenses, for 2017. *See* Exhibit "A." As evidenced by company documents dated April 5, 2018, it is undisputed that $22,584.00 is due and outstanding to Plaintiff Five Zoo from 2017. *See* Exhibit "B," pg. 1. Similarly, it is undisputed that 25,000 CAD ($19,334.12 USD at the current exchange rate) is due to Plaintiff for services rendered in 2017. *See* Exhibit "B," pg. 2.  Even though Plaintiff Katsoolis has performed all of her duties under the 2017 Contract, $41,918.12 is still due and outstanding to Plaintiffs.

#### ii.      2018

23.      Throughout October and November of 2017, Defendant Brezer hounded Plaintiff for a 2018 employment agreement. On November 3rd, for example, he asked Plaintiff via text "did you get anywhere on employment agreements with DM[?]" "DM" refers to Danny Matthews, Esq., Liquid's securities attorney based in Vancouver. But, in the end, Plaintiff had to draft the 2018 Contract, a copy of which she sent to Defendant Brezer on or about January 1, 2018. *See* Exhibit "C." As the Court will see, the 2018 Contract requires Plaintiff to be compensated $400,000.00 annually. *See id*., Section 2.1. What is more, Plaintiff was entitled, as a signing bonus, 400,000 shares in the company, per paragraph 2.3.2. *See id*. Finally, Section 3.3 provides

that Plaintiff is entitled to a severance pay of $1,000,000.00 in the event her position as CEO is terminated for other "than just and sufficient cause." *Id.*

24.     Since sending the 2018 Contract, Plaintiff has duly performed all of her duties thereunder. Defendant Liquid has accepted the same without reservation. As but one example, on January 14, 2018, Plaintiff, as CEO of Defendant Liquid, reviewed and signed the publicly filed document with the Securities Exchange Commission titled "AMENDED AND RESTATED DEFINITIVE                 ARRANGEMENT                 AGREEMENT."         *See* https://www.sec.gov/Archives/edgar/data/884247/000119312518181963/d409843dex43.htm; *see also* Liquid's press release dated January 15, 2018, attached as Exhibit "D."

25.     Indeed, Defendant Brezer, in a February 15, 2018 text, told Plaintiff "love it all great" in reference to the work that she was doing as CEO.  As a result, Plaintiff was apportioned 400,000 options in the company as stated on page 63 of Liquid's Joint Information Circular dated in or about May 23, 2018. Nonetheless, on August 14, 2018, Plaintiff was instructed by Defendant Brezer to sign off on $233,750.00 owed to Defendant Jackson, in addition to Defendant Brezer's wife and four others, totaling $724,487.28. *See* Exhibit "E." Plaintiff's 2018 compensation was intentionally omitted.

26.     Plaintiff's work as CEO on behalf of Liquid continued throughout 2018 up until the end of August. For example, she negotiated the production of the *My Haunted House* movie over the course of the year, as evidenced by a July 25, 2018 e-mail string between Plaintiff and Defendant Brezer. During the month of August, Plaintiff and Defendant Liquid also negotiated a settlement with a third party in connection with Plaintiff's dealings with such third party "in her capacity as CEO."

27.     Therefore, Plaintiff is entitled pro-rated compensation of the $400,000.00 set forth under the 2018 Contract up until her duties as CEO ceased in August of 2018, which amounts to approximately $266,666.00, in addition to the signing bonus of 400,000 shares.

28.     However, Plaintiff hasn't been compensated either for her 2017 or 2018 services because of the intentionally hostile and discriminatory environment at Liquid, as more fully evidenced below.

**B.     Hostile Work Environment**

29.     During Plaintiff's tenure at Liquid, the following offensive conduct became a condition of Plaintiff's continued employment and/or Defendants' conduct was severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

*i.     Defamation*

30.     On April 6, 2018, Defendant Cruz, CFO and VP of Finance, defamed Plaintiff during his phone conversation with Mr. Nicholas Levis, a shareholder of Liquid whose office in this District. Defendant Cruz proceeded to tell Mr. Levis, who was located in this District during the call, how Plaintiff and Mr. Jesse Cole, a party with whom Liquid had contracted, were involved in a "love affair" and that Plaintiff had "gone rogue" because of her "suspicious relationship" with Mr. Cole.

31.     Such malicious lies are contradicted by the parties' correspondence. Numerous e-mails from Defendant Brezer to Plaintiff throughout 2017 gave her actual authority to deal as CEO with Mr. Cole on behalf of Liquid. What is more, Plaintiff was responsible for bringing four investors into Defendant Liquid in 2017: (1) Mr. Levis' cousin for $100,000.00, (2) Mr.

Chris Cooney -- a business contact -- for $100,000.00, (3) Mr. William Santor, CEO of Productivity for $250,000.00, and (4) a private investor for $10,000.00.

32.     To Plaintiff's knowledge, none of the individual male defendants ever spoke about one another in such a derogatory and insulting way as Defendant Cruz did about Plaintiff.

    *ii*.  *Harassment*

33.     In addition to being defamed, Plaintiff received a barrage of derogatory, harassing, and insulting passive aggressive texts and/or e-mails from the male members of the Liquid team. For example, in an e-mail dated April 6, 2018, Defendant Cruz stated to Plaintiff, with Defendants Brezer and Jackson copied: "Please don't bore me / fellow members of Liquid with your *twisted undocumented statements*." (Emphasis added.)

34.     On or about June 26, 2018, Plaintiff and Defendant Brezer exchanged the following texts, where "LMG" refers to Defendant Liquid:

    Defendant Brezer: "[a]ll day I've been dealing with [Jesse] Cole/JM shares all of which paper work isn't done right. My patience is done. Please respect my time, we have many other lmg issues going on . . . "

    Plaintiff: "[w]hat is the issue with [C]ole shares? [W]hat other LMG issues? *I keep asking but you aren't letting me know what they are*." (Emphasis added.)

    Defendant Brezer's: "Legal option is incorrect. Opinion."

    Plaintiff: "Because."

    Defendant Brezer: "I'll write it down. I'm done with this."

35.     Defendant Brezer wouldn't have dared to speak in such an aggressive and insulting way to the male members of Liquid. He did reserve such insulting language for Plaintiff, the only female.

C.      **Termination & Constructive Termination**

36.     Given the brewing animosity towards and disrespectful treatment of Plaintiff by the male members of Liquid, her CEO position was either terminated without "just and sufficient cause" or, in the alternative, she was constructively discharged in 2018.

*i.      Chief Executive Officer*

37.     Plaintiff commenced her 2018 CEO duties starting in January. *See, e.g.,* https://www.sec.gov/Archives/edgar/data/884247/000119312518181963/d409843dex43.htm (listing Plaintiff on the signature page of *Defendant's Amended and Restated Definitive Arrangement Agreement* as "Chief Executive Officer.") As evidenced by numerous e-mails between Defendant Brezer and Plaintiff, she continued performing CEO services to Defendant Liquid up until August of 2018. During that month, she negotiated a dispute with a third party, resulting in a settlement agreement which provided that she had been dealing in 2017 with such third party "in her capacity as CEO." Regardless, the 2018 Contract, in Section 3.3, provides that Plaintiff is entitled to a severance pay of $1,000,000.00 in the event her CEO position is terminated for other "than just and sufficient cause." *See* Exhibit "C," Section 3.3

38.     The fact of such termination is clear. On March 28, 2018, Plaintiff wrote to the board of Defendant Liquid about her being "removed . . . from all correspondence, group e-mails, and BBMs" and how "on Thursday March 15, *I was told I would no longer be the CEO* which, for all intents and purposes, said removal was essentially effective months ago when you started working against my efforts to pursue the Company's mission," during which time "I have been blocked by your efforts from performing my role effectively." (Emphasis added.) Then, on May 23, 2018, Defendant Brezer sent an e-mail to Plaintiff. The e-mail attached a draft of a press

release concerning Plaintiff's CEO position titled *"Termination of Krysanne."* (emphasis added). *See* Exhibit "F," pg. 2.

39.     Subsequently, the final May 28, 2018 press release announcing that Plaintiff ostensibly "stepped down" made it apparent that she "saw the LMG's growth from startup to growth of the company," including its being listed on NASDAQ.  *See* Exhibit "G". This camouflaged termination goes on to state that "[t]he board of LMH thanks Ms. Katsoolis for her contribution to the company over the past four years as CEO. Her efforts and direction during our growth stages of the company have *played a key role* in the Company's success." (Emphasis added.) Clearly not evidence of "just and sufficient cause."

40.     Therefore, Plaintiff is entitled to a $1,000,000.00 severance.

        *ii.     Board of Directors*

41.     More recently, on August 24, 2018, Plaintiff resigned her position as a board member under protest given the foregoing via an e-mail. The e-mail states, in pertinent part, that she was resigning given the "progressive marginalization and the effective neutering of [her] responsibilities, first as CEO and now as President."

        **D.     <u>Defendant Liquid Is An Alter Ego Of The Defendants</u>**

42.     Throughout Plaintiff's tenure at Defendant Liquid in 2018, the individual defendants have consistently represented that the company, or the companies which folded into it via the original and amended Arrangement Agreements in 2017 and 2018, was too undercapitalized to pay its obligations to her. What is more, the individual defendants have, on a consistent basis, not followed corporate formalities required by the by-laws of Liquid, such as providing sufficient notice or board meetings and keeping board meeting minutes, rendering it an alter ego.

12

43.   On September 7, 2018, Plaintiff, via her counsel, sought to resolve outstanding financial issues with Liquid via a letter to Mr. Stephen Jackson, a new member of the company's board who is also, upon information and belief, counsel to one of Mr. Gaglardi's companies. Mr. Jackson is also on the board of Defendant Leading Brands. https://www.marketwatch.com/press-release/leading-brands-inc-announces-appointments-to-the-board-2018-07-20.   These   efforts were, unfortunately, fruitless.

44.   That's because defendants have consistently represented to Plaintiff throughout 2018 that Defendant Liquid is insufficiently capitalized to satisfy its contractual obligations to Plaintiff. On March 23, 2018, for example, Defendant Brezer sent a message to Plaintiff as follows: "*We literally have no money*, check the account, done??" (Emphasis added)  On May 8[.] he sent another text to Plaintiff saying "LMG [Liquid Media Group] *has no money*." (Emphasis added) Even Liquid's SEC filing from January 14, 2018, seeks to keep the company's "cash on hand" opaque: "[REDACTED: COMMERCIALLY SENSTIVE DOLLAR AMOUNTS]." *See* https://www.sec.gov/Archives/edgar/data/884247/000119312518181963/d409843dex43.htm, page 18. This publicly filed document further evidences the individual defendants' intentional undercapitalization of Liquid – all the while presenting to the public that it is liquid enough to make $4,000,000.00 acquisitions, such as the fifty-one (51%) stake in Majesco Entertainment Company on or about January 15, 2018.

45.   In addition to the foregoing, the individual defendants have consistently failed to honor corporate formalities. For example, Plaintiff on numerous occasions notified the Board of Liquid about a lack of transparency in its dealings with her, a clear violation of applicable Canadian corporate governance principles.  Information regarding key corporate matters was withheld from the Plaintiff, including appointment of additional Board members (such as the

appointment of Defendant Jackson to the Board), closing of key corporate deals (the first the Plaintiff heard about the deal to acquire the company Stratoscore was in a public industry press release on Deadline.com), hiring and remuneration to directors, and matters relating to the finances of Liquid.  Plaintiff on numerous occasions asked for information regarding these matters which were never forthcoming from the Defendant.  As additional examples:

a.  On February 15, 2018 Plaintiff asked Defendant Brezer: "Unless I totally understand your game plan I cannot synergize with it;" and

b.  On March 2, 2018, Defendants announced hiring and paying an additional employee and board member and Plaintiff wrote: "You could have at least discussed this with me before making that decision."

46.    Consequently, Plaintiff respectfully seeks an order from this Court piercing Defendant Liquid's corporate veil so as to make the individual defendants liable for Liquid's contractual debts to Plaintiff or, in the alternative, for Liquid to be held liable for the individual defendant's torts and discriminatory actions against Plaintiff based on a theory of *respondeat superior*.

### E.    Likewise, Defendant Liquid Is An Alter Ego Of Leading Brands

47.    As set forth above, in addition to not honoring the corporate formalities set forth in Defendant Liquid's bylaws, the individual defendants intentionally undercapitalized Defendant Liquid in 2018 so that it could avoid paying Plaintiff, all the while, upon information and belief, Leading Brands does not have such liquidity problems. This way, any assets would either be in Leading Brand's name or held personally by the individual defendants. In either case, the individual defendants have sought use of the corporate form as a sword to perpetrate a constructive fraud on Plaintiff.

48.     This isn't a product of Plaintiff's imagination.

49.     As evidenced by numerous press releases, the directors between Defendant Liquid and Leading Brands are one in the same. As of July 20, 2018, Defendants Brezer, Jackson and Cruz are on the Leading Brands board. *See* https://www.marketwatch.com/press-release/leading-brands-inc-announces-appointments-to-the-board-2018-07-20. Defendant Brezer is the director. *See*      https://globenewswire.com/news-release/2018/07/19/1539595/0/en/Leading-Brands-Inc-Announces-Change-in-Board-of-Directors.html.

50.     In light of the foregoing overlapping corporate governance, Defendant Liquid has no corporate direction independent from Leading Brands and vice versa. Instead, as is apparent from the fact that the board of directors is the same for both companies, Defendant Liquid and Leading Brands are alter egos of one another.

51.     Thus, Plaintiff respectfully requests below that that Court use its equitable powers to pierce the corporate veil between Defendant Liquid and Leading Brands so as to make Leading Brands responsible for the contractual debts of Defendant Liquid in the event the company is insufficiently capitalized to satisfy a judgment.

## CAUSES OF ACTION

### COUNT ONE:

### BREACH OF 2017 CONTRACT

52.     Plaintiffs restate each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

53.     Defendant Liquid executed the 2017 Contract with Plaintiff Five Zoo. Under the agreement, Defendant Liquid was obligated to remit $10,000.00 a month to Plaintiff Five Zoo for Plainitff's services as CEO in 2017.

54.     To date, Plaintiff performed all of her CEO duties under the 2017 Contract. As set forth above, she was responsible for bringing in funding to the company throughout 2017, in addition to working on other projects at the behest of the company.

55.     Notwithstanding, Defendant Liquid has refused to remit compensation and expenses totaling $41,918.12 to Plaintiff Five Zoo, even though such monies are acknowledged in Liquid's documents.

56.     As a result of the foregoing, Defendant Liquid is liable to Plaintiff Five Zoo for $22,584.00, and Plaintiff for $19,334.12, in damages resulting of its breach of the 2017 Contract or an amount to be determined at trial.

## COUNT TWO:

### BREACH OF 2018 CONTRACT

57.     Plaintiffs restate each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

58.     Defendant Liquid accepted the 2018 Contract's terms by benefitting from Plaintiff's performance thereunder until August of 2018.

59.     As a result, Defendant Liquid is liable to Plaintiff for her pro-rated 2018 compensation totaling $266,666.66.

60.     In addition to the foregoing, Plaintiff was terminated without "just and sufficient cause" under the 2018 Contract. This is evidenced by, among other things, Defendant Brezer's e-mail attaching a press release entitled "*Termination of Krysanne*." (Emphasis added.)

61.     Thus, Plaintiff is entitled to the severance of $1,000,000.00 called for under the 2018 Contract.

62.     As a result of the foregoing, Plaintiff is entitled to a judgement of at least $1,266,666.66 for her 2018 Contract damage or an amount to be determined at trial.

## COUNT THREE:

### DEFAMATION *PER SE* AGAINST DEFENDANT CRUZ

63.     Plaintiffs restate each and every allegation contained in the paragraphs above, as though fully cited in this paragraph

63.     Defendant Cruz, by stating third to party shareholder Nicholas Levis, that Plaintiff was in a "suspicious relationship" with Jesse Cole and had "gone rogue," among other things, defamed Plaintiff's character by suggesting improper performance of her professional duties or unprofessional conduct.

64.     Such defamation was *per se*.

65.     In the alternative, such statements were mixed-opinion and are actionable.

66.     Given the insulting nature of the statements and Defendant Cruz's otherwise reprehensible discriminatory conduct towards Plaintiff, she seeks compensatory damages of at least $1,311,690.87, or an amount to be determined at trial, in addition to punitive damages totaling $9,181,836.09, or an amount to be determined at trial.

## COUNT FOUR:

### VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, N.Y. CITY ADMIN. CODE §§ 8-101 – 8-131 BY DEFENDANT LIQUID

67.     Plaintiffs restate each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

68.     Given the foregoing actions by the individual defendants within the course and scope of their duties as board members to Defendant Liquid, or as agents working at the behest

of a company which has been subsequently merged into Liquid, the company intentionally created or permitted a hostile work environment.

69.     As is more fully set forth above, the individual defendants, all of whom are current board members of Defendant Liquid, wouldn't have dared to speak to other male members in such an insulting and aggressive way as they did with Plaintiff, who was the only female board member of Liquid and, up until recently, the company's CEO.

70.     Such differential treatment of Plaintiff in terms, conditions, and privileges of employment establishes a direct violation by Defendant Liquid of N.Y. City Admin. Code, §8-107(1)(a)(3) or, in the alternative, establishes an indirect violation via the conduct of its wholly owned subsidiary, Leading Brands, which acted as Liquid's "alter ego."

71.     Plaintiff seeks compensatory damages of at least $1,311,690.87 against Defendant Liquid or an amount to be determined at trial, in addition to punitive damages totaling $9,181,836.09, or at an amount to be determined at trial.

## COUNT FIVE:

### VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, N.Y. CITY ADMIN. CODE §§ 8-101 – 8-131 BY DEFENDANT BREZER

72.     Plaintiffs restate each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

73.     Given the foregoing actions by Defendant Brezer, including him demanding that Plaintiff sign off on compensation for others and his insulting e-mails and/or texts, he intentionally created a hostile work environment for Plaintiff at Liquid.

74.     As is more fully set forth above, Defendant Brezer wouldn't have dared to speak to other male members in such an insulting and aggressive way as he did with Plaintiff, who was the only female board member of Liquid and, up until recently, the company's CEO.

75.     Such differential treatment of Plaintiff in terms, conditions, and privileges of employment establishes a violation by Defendant Brezer of N.Y. City Admin. Code, §8-107(1)(a)(3).

76.     Plaintiff seeks compensatory damages of at least $1,311,690.87, or an amount to be determined at trial, in addition to punitive damages totaling $9,181,836.09, or at an amount to be determined at trial.

## COUNT SIX:

### VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, N.Y. CITY ADMIN. CODE §§ 8-101 – 8-131 BY DEFENDANT CRUZ

77.     Plaintiffs restate each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

78.     Given the foregoing actions by Defendant Cruz, including his insulting e-mails and/or texts, he intentionally created a hostile work environment for Plaintiff at Liquid.

79.     As is more fully set forth above, Defendant Cruz wouldn't have dared to speak to other male members in such an insulting and aggressive way as he did with Plaintiff, who was the only female board member of Liquid and, up until recently, the company's CEO.

80.     Such differential treatment of Plaintiff in terms, conditions, and privileges of employment establishes a violation by Defendant Cruz of N.Y. City Admin. Code, §8-107(1)(a)(3).

81.     Plaintiff seeks compensatory damages of at least $1,311,690.87, or an amount to be determined at trial, in addition to punitive damages totaling $9,181,836.09, or at an amount to be determined at trial.

## COUNT SEVEN:

### VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, N.Y. CITY ADMIN. CODE §§ 8-101 – 8-131 BY DEFENDANT JACKSON

82.     Plaintiffs restate each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

83.     Given the foregoing actions by Defendant Jackson, including his insulting e-mails and/or texts giving Plaintiff the ultimatum that she could only receive an office or a salary, but not both, all the while he approved of both for a male hire in Los Angeles, Defendant Jackson intentionally created a hostile work environment for Plaintiff at Liquid.

84.     As is more fully set forth above, Defendant Jackson wouldn't have dared to speak to other male members in such an insulting and aggressive way as he did with Plaintiff, who was the only female board member of Liquid and, up until recently, the company's CEO.

85.     Such differential treatment of Plaintiff in terms, conditions, and privileges of employment establishes a violation by Defendant Jackson of N.Y. City Admin. Code, §8-107(1)(a)(3).

86.     Plaintiff seeks compensatory damages of at least $1,311,690.87, or an amount to be determined at trial, in addition to punitive damages totaling $9,181,836.09, or at an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays that the Court declare, adjudge and decree that:

1.     Defendant Liquid is liable to Plaintiff Five Zoo for the foregoing 2017 Contract damages or an amount to be determined at trial;

2.     Defendant Liquid is liable to Plaintiff for her foregoing 2018 Contract damages or an amount to be determined at trial;

3.      The corporate veil of Defendant Liquid is pierced so that the individual Defendants, namely, Brezer, Cruz, and Jackon, be held personally liable for the foregoing contractual debts of Defendant Liquid to Plaintiff Five Zoo and Plaintiff given that the company was an alter ego of the individual defendants and/or that such veil be pierced so that Leading Brands, which is a minority shareholder of Defendant, is made liable for the debts of Defendant Liquid;

4.      Defendant Cruz is liable to Plaintiff for the foregoing compensatory and punitive damages resulting from his *per se* defamation or an amount to be determined at trial;

5.      The individual Defendants aided and abetted each other's harassment of and discriminatory practices under applicable New York City Human Rights Law against Plaintiff, making them jointly and severally liable to Plaintiff for the foregoing compensatory and punitive damages under the foregoing law;

6.      Plaintiffs recover their costs of this lawsuit, including reasonable attorneys' fees, in addition to pre and post judgment interest;

7.      Plaintiffs are granted such other, further, and different relief as may be deemed just and proper by the Court.

## DEMAND FOR JURY TRIAL

Defendant hereby demands a trial by jury

Dated: October 17, 2018
New York, New York

_____
Ryan E. Long, Esq. (RL-1974)
Long & Associates PLLC
135 West 27th Street – 8th Floor
New York, New York 10001
Telephone: (212) 360 – 0394
Facsimile: (646) 612 – 7911
E-mail: rlong@landapllc.com

*Attorneys for Plaintiffs Krysanne Katsoolis and Five Zoo Concepts & Design, Inc.*