**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                   :

KRYSANNE KATSOOLIS                  :
AND FIVE ZOO CONCEPTS & DESIGN INC.  :
                                   :

         Plaintiffs.               :      **FILED ELECTRONICALLY**
                                   :

    -- against --             :      **1:18-CV-09382**
                                   :

                                   :      **AMENDED COMPLAINT**
                                   :

LIQUID MEDIA GROUP, LTD.,        :
DANIEL CRUZ, CHARLES BREZER, AND  :
JOSHUA JACKSON             :
                                   :

         Defendants.         :
                                   :
                                   :
-----------------------------------------------------------------x

## AMENDED COMPLAINT

      Krysanne Katsoolis ("Plaintiff") and Five Zoo Concepts & Design Inc. ("Plaintiff Five Zoo") (hereinafter collectively "Plaintiffs") allege the following upon information and belief as to the acts of others. As to their own actions, they allege the following upon personal belief:

## PRELIMINARY STATEMENT

      1.      Plaintiff is a veteran media industry Business Affairs & Acquisitions executive. She obtained her Master of Laws as a Fulbright Scholar from Columbia Law School in 1992. Until recently, Plaintiff was the only female member of Defendant Liquid Media Group, LTD's ("Liquid") Board of Directors and was the company's CEO. Later in 2018, she resigned her board position under protest and was terminated as CEO without "just and sufficient" cause. Ironically, Plaintiff remains "President."

2.      But this title is empty window dressing. She still hasn't been paid over $1,000,000.00 for her 2017 and 2018 CEO services to Liquid.

3.      This is so, even though, Plaintiff was retained as CEO and Director pursuant to an Independent Contract ("2017 Contract") between Defendant Liquid Media Group, Ltd. ("Defendant Liquid" or "Liquid") and Plaintiff Five Zoo. The 2017 Contract required Plaintiff Five Zoo to be paid $10,000.00 a month for Plaintiff's services. She duly performed her 2017 duties to Liquid but Five Zoo has yet to be paid $20,000.00 in compensation and $2,584.54 in expenses. What is more, Plaintiff is still owed 25,000.00 CAD ($19,334.12 USD at today's exchange rate) for services rendered to Defendant Liquid in 2017. Thus, Plaintiffs are collectively owed $41,918.66 for 2017.

4.      Similarly, Plaintiff and Liquid entered into an Employment Agreement ("2018 Contract") on or about January 1, 2018. The 2018 Contract evidences an informal oral compensation agreement entered into between Plaintiff and the individual defendants in or about October 2017.  The 2018 Contract requires Liquid to pay Plaintiff a $400,000.00 salary for her CEO services. It also requires Liquid to pay Plaintiff at $1,000,000.00 severance in the event she is terminated without "just and sufficient cause." She performed such duties to Liquid, engendering statements from Defendant Brezer such as "love it all great." Notwithstanding, on August 14, 2018, he instructed Plaintiff to sign off on a total of $724,487.28 owed to various creditors, including Defendant Joshua Jackson, while omitting Plaintiff's 2018 CEO compensation and expenses totaling $3,106.09.

5.      The foregoing injuries emanate from Liquid's hostile and discriminatory work environment. When Plaintiff approached Defendant Joshua Jackson in or about December 2017 about obtaining an office in New York, he gave her an ultimatum: office or salary. In the same

breath, Defendant Jackson had already approved the hiring of a male TV executive in Los Angeles for a yearly salary of $500,000.00 in addition to an office. Defendant Jackson said this was "reasonable" during a subsequent board meeting.

6.      During a phone call with a shareholder located in New York City in or about April of 2018, Defendant Daniel Cruz maliciously defamed Plaintiff, telling the shareholder that Plaintiff was having a "love affair" with a counterparty to a contract with Liquid, that she had "gone rogue" in light of her unauthorized dealings with such counterparty, and that the relationship was otherwise "suspicious." The truth: numerous e-mails from Defendant Brezer gave Plaintiff actual authority to deal as CEO of Liquid with the counterparty.  That's why, on April 6, 2018, Plaintiff even sent a text to Joshua Jackson about Defendant Cruz's "toxic . . . communication[s] from your buddy Daniel." Jackson ignored the text. This was in addition to ignoring numerous voicemails to him from Plaintiff throughout the year about Defendant Cruz's harassing behavior.

7.      As a further effect of the foregoing discriminatory and hostile environment, Defendants intended to terminate Plaintiff as CEO without "just and sufficient cause" during a board meeting on or about March 20, 2018. As evidence, a May 23, 2018 draft of the press release announcing this move from Defendant Brezer to Plaintiff was titled *"Termination of Krysanne."* (Emphasis added.) This is notwithstanding the fact that Plaintiff had called upon her extensive contacts in the entertainment industry to bring in several substantial investments into Liquid totaling approximately $460,000.00 in 2017 alone and had otherwise performed her CEO duties throughout 2018. Consequently, Plaintiff is entitled to the $1,000,000.00 severance in the 2018 Contract.

8.    Plaintiff sought to resolve outstanding issues with Liquid on or about September 7, 2018. However, Mr. Stephen Jackson, a new board member of Defendant Liquid, represented to Plaintiff's counsel that "I recall that I had been advised that there may not be significant funds available" to satisfy Defendant Liquid's obligations to Plaintiff. Other members of Liquid, including Defendant Brezer, have also consistently represented to Plaintiff throughout 2018 that they were undercapitalized and unable to satisfy their obligations to her. On top of this, corporate formalities weren't honored by the individual defendants when purporting to run Defendant Liquid, further evidencing that the company acted as their "alter ego."

9.    Consequently, Plaintiffs were forced to file this lawsuit.

10.   Plaintiffs bring this action for the following: (1) breach of contract against Defendant Liquid, for which Plaintiff Katsoolis seeks compensatory damages totaling $1,311,690.75, (2) defamation against Defendant Cruz for compensatory damages of $1,311,690.75 and punitive damages of $9,181,835.25, (3) violation of New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 – 8-131 against all Defendants, who aided and abetted one another, for which Plaintiff Katsoolis seeks compensatory damages of $1,311,690.75 and punitive damages of $9,181,835.25, (4) promissory estoppel for Plaintiff's losses in 2018 totaling $1,269,772.09 in the event the Court finds no 2018 Contract, and (5) unjust enrichment for Plaintiff's damages in 2018 totaling $1,266,772.09 in the event the Court finds that there is no 2018 Contract or promissory estoppel.

11.   The foregoing factual allegations are more fully supported below.

## PARTIES

12.   Plaintiff is a citizen of New York City and Plaintiff Five Zoo is a New York corporation whose principal place of business is also here. Since graduating from Columbia Law

School in 1992, Plaintiff has had an extensive career in the entertainment industry, including as director of Plaintiff Five Zoo. After law school, she was Manager of Business & Legal Affairs at Miramax Film Corp. Plaintiff then moved onto a Senior Vice President position of acquisitions at Fox Lorber Inc.  More recently, she was a partner at Cactus Three Entertainment, responsible for the production of films including *The March*, *Afternoon of a Faun*, and the Academy Award winning film *The Cove*. https://www.linkedin.com/in/krysanne-katsoolis-563490b8/.

13.     Defendant Liquid Media Group, Ltd. (f/k/a "Leading Brands, Inc."), is a Canadian concern. Upon information and belief, Liquid's principal place of business is 409 Granville Street, Suite 1000, Vancouver, BC, Canada V6C1T2.  However, upon further information and belief, since on or about January 15, 2017, Liquid has maintained an office in this District located at: 53 West 36ᵗʰ Street, Suite 205, New York, NY 10018. Liquid is listed on NASDAQ, which is headquartered in this District, albeit under "YVR." https://globenewswire.com/news-release/2018/08/13/1550784/0/en/Liquid-Media-Group-Ltd-to-Begin-Trading-on-Nasdaq-as-YVR.html.

14.     Leading Brands, Inc. ("Leading Brands") is a Canadian corporation. On or about September 17, 2017, Liquid and Leading Brands, which was listed on NASDAQ under the symbol "LBIX," did a reverse merger per an "Original Arrangement Agreement."  However, Liquid and Leading Brands amended their arrangement on or about January 15, 2018. *See* https://www.sec.gov/Archives/edgar/data/884247/000119312518181963/d409843dex43.htm. Pursuant to that amendment, Leading Brands shareholders took 25.8% of the "post transaction entity" whereas Liquid shareholders would own 74.2%. As the Court will see from reviewing the foregoing link, the amended arrangement is signed on behalf of Liquid by Plaintiff as "Chief Executive Officer."

15.     Defendant Daniel Cruz is CFO, VP of Finance, and a member of the board of directors of Defendant Liquid.  He is a citizen of British Columbia. During the relevant time period above, he was a director of Defendant Liquid. He has traveled to and otherwise conducted Liquid business in this district, including with Plaintiff.

16.     Defendant Charles Brezer is, upon information and belief, the current CEO of Liquid. Defendant Brezer is a citizen of British Columbia. Upon information and belief, he is married to Mrs. Devonna Gaglardi, the half-sister of Mr. Thomas Gaglardi. Mr. Gaglardi resigned as Director of Leading Brands on or about July 19, 2018. During the relevant time period, Defendant Brezer has travelled to or otherwise conducted Liquid business in this District, including for Liquid related meetings.

17.     Defendant Joshua Jackson is the Chairman of Liquid in addition to being a board member. In addition to the foregoing, Defendant Jackson is an actor, producer, and director. He has starred in shows such as *Dawson's Creek*. He is domiciled in Los Angeles, California. During the relevant time period, Defendant Jackson has travelled to or otherwise conducted Liquid business in this District, including for Liquid related meetings.

**JURISDICTION AND VENUE**

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a).

19.     As for personal jurisdiction, this Court has it pursuant to CPLR §302(a)(1), (2), or, in the alternative, (3).

20.     This Court has general jurisdiction over Liquid. As is more fully set forth below, Liquid's contacts with this District are so substantial and of such a nature over at least a two-year period so as to render it "at home" here. For one thing, Defendant Liquid has maintained an office in Manhattan since early 2017 and is otherwise listed on NASDAQ, which is

headquartered here. What is more, the individual Defendants all rendered services on behalf of Liquid here that went beyond mere solicitation, were sufficiently important to Liquid so that these individuals traveled to this District, and all of them were primarily employed by Defendant – not engaged in a similar service for other similarly situated concerns or as independent contractors.

21.      More specifically, during Plaintiff's performance of her 2017 and 2018 Contracts throughout 2017 and 2018, she sent or received Liquid related e-mails/blackberry messages to and from Defendants, respectively, concerning her duties thereunder as follows:

(a)      Approximately: 2,000 e-mails between Defendant Brezer's e-mail address REDACTED and krysanne.katsoolis@gmail.com, 250 e-mails between REDACTED and Plaintiff's same e-mail address, and 131 e-mails between Defendant Brezer's e-mail address REDACTED and krysanne@liquidmediagroup.co;

(b)      Roughly: 33 e-mails between Defendant Cruz using e-mail address REDACTED and krysanne@liquidmediagroup.co, 1,200 e-mails between daniel@liquidmediagroup.co and krsyanne.katsoolis@gmail.com, 1,100 e-mails between REDACTED and Plaintiff's Gmail account, and 11 e-mails from REDACTED to Plaintiff's Gmail account.

(c)      Around: 750 e-mails between Defendant Jackson using e-mail address REDACTED and Plaintiff's Gmail account, in addition to 130 e-mails between Defendant Jackson's e-mail address REDACTED and Plaintiff's Gmail account; and

(d)      Approximately 200 blackberry messages concerning Plaintiff's performance of the 2017 and 2018 Contracts between Defendant Brezer and Plaintiff.  As between Defendant Cruz and Plaintiff, there were around 200 blackberry messages pertaining to the same subject matter.

22.     The foregoing written communications are in addition to almost daily phone calls between Plaintiff and the individual Defendants over the period from 2017 and 2018 concerning her responsibilities to Liquid under the 2017 and 2018 Contracts.  During discovery, Plaintiff can produce her phone records evidencing such consistent communications that are relevant to her performance of her duties under the 2017 and 2018 Contracts.

23.     Individual Defendants' travels to New York, either on behalf of Liquid and/or in their personal capacities on non-Liquid business, dovetailed with the foregoing. On or about July 4, 2017, Defendants Cruz and Jackson met with Plaintiff in New York City on Liquid related business. Later, in October of 2017, Defendants Cruz and Jackson met with Plaintiff to pitch business to potential financier Weiser Capital. As for 2018, Defendants Cruz, Brezer, and Jackson met in New York City on Liquid related business between the 7th and 10th of March 2018.

24.     Similarly, Defendant Cruz effectuated his defamation of Plaintiff on or about April 6, 2018, using, upon information and belief, the same phone number – REDACTED – that he used to correspond with her above via blackberry. This was shortly after Defendant Cruz's meeting with Plaintiff and third-party shareholder Mr. Nicholas Levis, as more fully set forth below.

25.     Finally, these communications from Defendants, whether they were verbal or written, were used to effectuate the disparate treatment of Plaintiff over the same time period, as more fully set forth below.

26.     Even if this Court doesn't have general jurisdiction, the foregoing facts establish specific jurisdiction over Defendant Liquid. These facts evidence that Liquid and the individual Defendants purposefully directed their activities to this District. Not only did Liquid open an office here, but the company knew that Plaintiffs were domiciled here, given the extensive

meetings between Liquid's directors/or officers and Plaintiffs here. As early as January 1, 2014, for example, Liquid's predecessor, Liquid Entertainment, LTD, entered into a written management agreement with Plaintiff in which she used her address in this District. What is more, even the 2018 Contact with Liquid envisions that the "normal workplace of the Executive [Plaintiff] is in New York." Exhibit "C," §1.6.

27.     What is more, the Plaintiffs' breach of contract, defamation, and related claims all spawn and arise from Defendant Liquid's conduct via the individual Defendants, which either took place, in whole or in part, in this District or caused Plaintiffs injury here. Given that Defendant Liquid knew, upon transacting with Plaintiffs in 2017 and 2018, that they were based in this District, assertion of personal jurisdiction over Defendant Liquid comports with fair play and substantial justice.

28.     Similarly, this Court has specific jurisdiction over the individual Defendants. During the relevant time period, they were either officers of Liquid or directly controlled the concern via their board of director positions. Given the foregoing factual allegations, Plaintiffs maintain that:

(1) Defendant Liquid obviously engaged in purposeful activities in this District pertaining to the 2017 and 2018 Contacts, in addition to the other behavior giving rise to Plaintiffs' claims;

(2) Liquid's activities were performed for the benefit of the individual Defendants, all of whom are stockholders of the company and, upon information and belief, are paid compensation in part via stock;

(3) Liquid's transactions with Plaintiffs were clearly performed at the direction of the individual Defendants, given that the contracts were either signed by one of such individuals and/or requested by them in 2017 or 2018; and

(4) the individual Defendants exercised direct control over Liquid during the relevant time period either as officers of via their dominance of the board of directors.

29.     Thus, the corporation acted as an agent of the individual Defendants in connection with the 2017 and 2018 Contracts, in addition to effectuating the other torts more fully set forth below.

## FACTUAL ALLEGATIONS

**A.     Breach of Contract**

*i.     2017*

30.     Per the 2017 Contract executed by Plaintiff Five Zoo and Defendant Liquid, Plaintiff was entitled to a monthly salary of $10,000.00, exclusive of costs and expenses, for 2017. *See* Exhibit "A." While the 2017 Contract included a British Columbia choice of law clause, there was no choice of forum provision. *See* Exhibit "A," ¶10. As evidenced by company documents dated April 5, 2018, it is undisputed that $22,584.00 is due and outstanding to Plaintiff Five Zoo from 2017. *See* Exhibit "B," pg. 1. Similarly, it is undisputed that 25,000 CAD ($19,334.12 USD at the current exchange rate) is due to Plaintiff for services rendered in 2017. *See* Exhibit "B," pg. 2.  Even though Plaintiff Katsoolis has performed all of her duties under the 2017 Contract, $41,918.66 is still due and outstanding to Plaintiffs.

*ii.     2018*

31.     In or about October 2017, Plaintiff and the individual defendants had a meeting wherein they had an oral agreement concerning 2017 compensation. Throughout October and November of 2017, Defendant Brezer hounded Plaintiff for a 2018 employment agreement. On November 3rd, for example, via text he asked Plaintiff "did you get anywhere on employment agreements with DM[?]" "DM" refers to Danny Matthews, Esq., Liquid's securities attorney

based in Vancouver. But, in the end, Plaintiff had to draft the 2018 Contract, a copy of which she sent to Defendant Brezer on or about January 1, 2018. *See* Exhibit "C." The 2018 Contract requires Plaintiff to be compensated at $400,000.00 annually. *See id*., Section 2.1. What is more, Plaintiff was entitled, as a signing bonus, 400,000 shares in the company, per paragraph 2.3.2. *See id*. Finally, Section 3.3 provides that Plaintiff is entitled to a severance pay of $1,000,000.00 in the event her position as CEO is terminated for other "than just and sufficient cause." *Id*.

32.     Since sending the 2018 Contract, Plaintiff has duly performed all of her duties thereunder. Defendant Liquid has accepted the same without reservation. As but one example, on January 14, 2018, Plaintiff, as CEO of Defendant Liquid, reviewed and signed the publicly filed document with the Securities Exchange Commission titled "AMENDED AND RESTATED DEFINITIVE ARRANGEMENT AGREEMENT." *See* https://www.sec.gov/Archives/edgar/data/884247/000119312518181963/d409843dex43.htm; *see also* Liquid's press release dated January 15, 2018, attached as Exhibit "D."

33.     Indeed, Defendant Brezer, in a February 15, 2018 text, told Plaintiff "love it all great" in reference to the work that she was doing as CEO.  As a result, Plaintiff was apportioned 400,000 options in the company as stated on page 63 of Liquid's Joint Information Circular dated in or about May 23, 2018. Nonetheless, on August 14, 2018, Plaintiff was instructed by Defendant Brezer to sign off on $233,750.00 owed to Defendant Jackson, in addition to Defendant Brezer's wife and four others, totaling $724,487.28. *See* Exhibit "E." Plaintiff's 2018 compensation was intentionally omitted.

34.     Plaintiff's work as CEO on behalf of Liquid continued throughout 2018 up until the end of August. For example, she negotiated a *My Haunted House* project over the course of the year, as evidenced by a July 25, 2018 e-mail string between Plaintiff and Defendant Brezer.

During the month of August, Plaintiff and Defendant Liquid also negotiated a settlement with a third party in connection with Plaintiff's dealings with such third party "in her capacity as CEO."

35.     Therefore, Plaintiff is entitled pro-rated compensation of the $400,000.00 set forth under the 2018 Contract up until her duties as CEO ceased in August of 2018, which amounts to approximately $266,666.00, in addition to the signing bonus of 400,000 shares.

36.     However, Plaintiff hasn't been compensated either for her 2017 or 2018 services because of the intentionally hostile work and discriminatory environment at Liquid, as more fully evidenced below.

**B.     Hostile Work Environment**

37.     During Plaintiff's tenure at Liquid, the following offensive conduct became a condition of Plaintiff's continued employment and/or Defendants' conduct was severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

*i.     Defamation*

38.     On April 6, 2018, Defendant Cruz, CFO and VP of Finance, defamed Plaintiff during his phone conversation with Mr. Nicholas Levis, a shareholder of Liquid who resides in this District. Defendant Cruz proceeded to tell Mr. Levis, who was located in this District during the call, how Plaintiff and Mr. Jesse Cole, a party with whom Liquid had contracted, were involved in a "love affair" and that Plaintiff had "gone rogue" because of her "suspicious relationship" with Mr. Cole.

39.     Such malicious lies are contradicted by the parties' correspondence. Numerous e-mails from Mr. Brezer to Plaintiff throughout 2017 gave her actual authority to deal as CEO with Mr. Cole on behalf of Liquid. What is more, Plaintiff was responsible for bringing four investors

into Defendant Liquid in 2017: (1) Mr. Levis' cousin sometime in 2017 for US$100,000.00, and (2) Mr. Chris Cooney -- a business contact -- for $100,000.00, (3) Mr. William Santor, CEO of Productivity for $250,000, and (4) a private investor for $10,000.

40.     To Plaintiff's knowledge, none of the individual male defendants ever spoke about one another in such a derogatory and insulting way as they did about Plaintiff.

> ii.    *Harassment*

41.     In addition to being defamed, Plaintiff received a barrage of derogatory, harassing, and insulting passive aggressive texts and/or e-mails from the male members of the Liquid team. For example, in an e-mail dated April 6, 2018, Defendant Cruz stated to Plaintiff, with Defendants Brezer and Jackson copied: "Please don't bore me / fellow members of Liquid with your *twisted undocumented statements*." (Emphasis added.)

42.     On or about June 26, 2018, Plaintiff and Defendant Brezer exchanged the following texts, where "LMG" refers to Defendant Liquid:

> Defendant Brezer: "[a]ll day I've been dealing with [Jesse] Cole/JM shares all of which paper work isn't done right. My patience is done. Please respect my time, we have many other lmg issues going on . . . "

> Plaintiff: "[w]hat is the issue with [C]ole shares? [W]hat other LMG issues? *I keep asking but you aren't letting me know what they are*." (Emphasis added.)

> Defendant Brezer's: "Legal option is incorrect. Opinion."

> Plaintiff: "Because."

> Defendant Brezer: "I'll write it down. I'm done with this."

43.     Defendant Brezer wouldn't have dared to speak in such an aggressive and insulting way to the male members of Liquid. He did reserve such insulting language for Plaintiff.

C.      **Termination & Constructive Termination**

44.     Given the brewing animosity towards and disrespectful treatment of Plaintiff by the male members of Liquid, her CEO position was either terminated without "just and sufficient cause" or, in the alternative, she was constructively discharged in 2018.

*i.      Chief Executive Officer*

45.     Plaintiff commenced her 2018 CEO duties starting in January. *See, e.g.,* https://www.sec.gov/Archives/edgar/data/884247/000119312518181963/d409843dex43.htm (listing Plaintiff on the signature page of *Defendant's Amended and Restated Definitive Arrangement Agreement* as "Chief Executive Officer.") As evidenced by the numerous e-mails between Defendant Brezer and Plaintiff, she continued performing CEO services to Defendant Liquid up until August of 2018. During that month, she participated in the negotiation of a dispute with a third party, resulting in a settlement agreement which provided that she was had been dealing in 2017 with such third party "in her capacity as CEO." Regardless of the actual end date of her CEO services, the 2018 Contract, in Section 3.3, provides that Plaintiff is entitled to a severance pay of $1,000,000.00 in the event her CEO position is terminated for other "than just and sufficient cause." *See* Exhibit "C," Section 3.3

46.     The fact of such termination is clear. On March 28, 2018, Plaintiff wrote to the board of Defendant Liquid about her being "removed . . . from all correspondence, group e-mails, and BBMs" and how "on Thursday March 15, *I was told I would no longer be the CEO* which, for all intents and purposes, said removal was essentially effective months ago when you started working against my efforts to pursue the Company's mission," during which time "I have been blocked by your efforts from performing my role effectively." (Emphasis added.) Then, on May 23, 2018, Defendant Brezer sent an e-mail to Plaintiff. The e-mail attached a draft of a press

release concerning Plaintiff's CEO position titled *"Termination of Krysanne*." (emphasis added). *See* Exhibit "F," pg. 2.

47.     Subsequently, the final May 28, 2018 press release announcing that Plaintiff ostensibly "stepped down" made it apparent that she "saw the LMG's growth from startup to growth of the company," including its being listed on NASDAQ.  *See* Exhibit "G". This camouflaged termination goes on to state that "[t]he board of LMH thanks Ms. Katsoolis for her contribution to the company over the past four years as CEO. Her efforts and direction during our growth stages of the company have *played a key role* in the Company's success." (Emphasis added.) Clearly not evidence of "just and sufficient cause."

48.     Therefore, Plaintiff is entitled to a $1,000,000.00 severance.

        *ii.     Board of Directors*

49.     On August 24, 2018, Plaintiff resigned her position as a board member under protest given the foregoing via an e-mail. The e-mail states, in pertinent part, that she was resigning given the "progressive marginalization and the effective neutering of [her] responsibilities, first as CEO and now as President."

        **D.     Defendant Liquid Is An Alter Ego Of The Defendants**

50.     Throughout Plaintiff's tenure at Defendant Liquid, the individual defendants have consistently represented that the company, or the companies which folded into it via the original and amended Arrangement Agreements in 2017 and 2018, was too undercapitalized to pay its obligations to her. What is more, the individual defendants have, on a consistent basis, not followed corporate formalities required by the by-laws of Liquid, such as providing sufficient notice or board meetings and keeping board meeting minutes, rendering it an alter ego.

51.     On September 7, 2018, Plaintiff, via her counsel, sought to resolve outstanding financial issues with Liquid via a letter to Mr. Stephen Jackson, a new member of the company's

board who is also, upon information and belief, counsel to one of Mr. Gaglardi's companies. Mr. Jackson is also on the board of Defendant Leading Brands. https://www.marketwatch.com/press-release/leading-brands-inc-announces-appointments-to-the-board-2018-07-20. These efforts were, unfortunately, fruitless.

52.     That's because defendants have consistently represented to Plaintiff throughout 2018 that Defendant Liquid is insufficiently capitalized to satisfy its contractual obligations to Plaintiff. On March 23, 2018, for example, Defendant Brezer sent a message to Plaintiff as follows: "*We literally have no money*, check the account, done??" (Emphasis added)  On May 8ᵗʰ he sent another text to Plaintiff saying "LMG [Liquid Media Group] *has no money*." (Emphasis added) Even Liquid's SEC filing from January 14, 2018, seeks to keep the company's "cash on hand" opaque: "[REDACTED: COMMERCIALLY SENSTIVE DOLLAR AMOUNTS]." *See* https://www.sec.gov/Archives/edgar/data/884247/000119312518181963/d409843dex43.htm, page 18. This publicly filed document further evidences the individual defendants' intentional undercapitalization of Liquid – all the while presenting to the public that it is liquid enough to make $4,000,000.00 acquisitions, such as the fifty-one (51%) stake in Majesco Entertainment Company on or about January 15, 2018.

53.     In addition to the foregoing, the individual defendants have consistently failed to honor corporate formalities. For example, Plaintiff on numerous occasions notified the Board of Liquid about a lack of transparency in its dealings with her, a clear violation of applicable Canadian corporate governance principles.  Information regarding key corporate matters was withheld from the Plaintiff, including appointment of additional Board members (such as the appointment of Defendant Jackson to the Board), closing of key corporate deals (the first the Plaintiff heard about the deal to acquire the company Stratoscore was in a public industry press

release on Deadline.com), hiring and remuneration to directors, and matters relating to the finances of Liquid.  Plaintiff on numerous occasions asked for information regarding these matters which were never forthcoming from Defendant Liquid.  As additional examples:

    a.  On February 15, 2018 Plaintiff asked Defendant Brezer: "Unless I totally understand your game plan I cannot synergize with it;" and

    b.  On March 2, 2018, Defendants announced hiring and paying an additional employee and board member and Plaintiff wrote:  "You could have at least discussed this with me before making that decision."

54.    Consequently, Plaintiff respectfully seeks an order from this Court piercing Defendant Liquid's corporate veil so as to make the individual defendants liable for Liquid's contractual debts to Plaintiff or, in the alternative, for Liquid to be held liable for the individual defendant's torts and discriminatory actions against Plaintiff based on a theory of *respondeat superior* – or vice versa.

### E.    Likewise, Defendant Liquid Is An Alter Ego Leading Brands

55.    As set forth above, in addition to not honoring the corporate formalities set forth in Defendant Liquid's bylaws, the individual defendants intentionally undercapitalized Defendant Liquid in 2018 so that it could avoid paying Plaintiff, all the while, upon information and belief, Leading Brands does not have such liquidity problems. This way, any assets would either be in Leading Brand's name or held personally by the individual defendants. In either case, the individual defendants have sought use the corporate form as a sword to perpetrate a constructive fraud on the Plaintiff.

56.    This isn't a product of Plaintiff's imagination.

57.     As evidenced by numerous press releases, the directors between Defendant Liquid and Leading Brands are one in the same. As of July 20, 2018, Defendants Brezer, Jackson and Cruz are on the Leading Brands board. https://www.marketwatch.com/press-release/leading-brands-inc-announces-appointments-to-the-board-2018-07-20. Defendant Brezer is the director. *See* https://globenewswire.com/news-release/2018/07/19/1539595/0/en/Leading-Brands-Inc-Announces-Change-in-Board-of-Directors.html.

58.     In light of the foregoing overlapping corporate governance, Defendant Liquid has no corporate direction independent from Leading Brands and vice versa. Instead, as is apparent from the fact that the board of directors is the same for both companies, Defendant Liquid and Leading Brands are alter egos of one another.

59.     Thus, Plaintiff respectfully requests that that Court use its equitable powers to pierce the corporate veil between Defendant Liquid and Leading Brands so as to make Leading Brands responsible for the contractual debts of Defendant Liquid in the event the company is insufficiently capitalized to satisfy a judgment.

## CAUSES OF ACTION

## COUNT ONE:

### BREACH OF 2017 CONTRACT

60.     Plaintiffs restate each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

61.     Defendant Liquid executed the 2017 Contract with Plaintiff Five Zoo. Under the agreement, Defendant Liquid was obligated to remit $10,000.00 a month to Plaintiff Five Zoo for Plaintiff's services as CEO in 2017.

62.     To date, Plaintiff performed all of her CEO duties under the 2017 Contract. As set forth above, she was responsible for bringing in funding to the company throughout 2017, in addition to working on other projects at the behest of the company.

63.     Notwithstanding, Defendant Liquid has refused to remit compensation totaling $41,918.66 to Plaintiffs, even though this compensation was acknowledged in the company's documents, along with expenses totaling $2,543.54.

64.     As a result of the foregoing, Defendant Liquid is liable to Plaintiff Five Zoo for $22,584.54, and Plaintiff for $19,334.12, in damages resulting of its breach of the 2017 Contract or an amount to be determined at trial.

## COUNT TWO:

### BREACH OF 2018 CONTRACT

65.     Plaintiff restates each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

66.     Defendant Liquid accepted the 2018 Contact's terms by benefitting from Plaintiff's performance thereunder until August of 2018.

67.     As a result, Defendant Liquid is liable to Plaintiff for her pro-rated 2018 compensation totaling $266,666.00 and expenses totaling $3,106.09.

68.     In addition to the foregoing, Plaintiff was terminated without "just and sufficient cause" under the 2018 Contract. This is evidenced by, among other things, Defendant Brezer's e-mail with the headline "*Termination of Krysanne*." (Emphasis added.)

69.     Thus, Plaintiff is entitled to the severance of $1,000,000.00 called for under the 2018 Contract.

70.     As a result of the foregoing, Plaintiff is entitled to a judgement of at least $1,269,772.09 for her 2018 Contract damage or an amount to be determined at trial.

## COUNT THREE:

## DEFAMATION *PER SE* AGAINST DEFENDANT CRUZ

71.     Plaintiff restates each and every allegation contained in the paragraphs above, as though fully cited in this paragraph

72.     Defendant Cruz, by stating third to party shareholder Nicholas Levis, that Plaintiff was in a "suspicious relationship" with Jesse Cole and had "gone rogue," among other things, defamed Plaintiff's character by suggesting improper performance of her professional duties or unprofessional conduct.

73.     Such defamation was *per se*.

74.     In the alternative, such statements were mixed-opinion and are actionable.

75.     Given the insulting nature of the statements and Defendant Cruz's otherwise reprehensible discriminatory conduct towards Plaintiff, she seeks compensatory damages of at least $1,311,690.75, or an amount to be determined at trial, in addition to punitive damages totaling $9,181,835.25.

## COUNT FOUR:

## VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, N.Y. CITY ADMIN. CODE §§ 8-101 – 8-131 BY DEFENDANT LIQUID

76.     Plaintiff restates each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

77.     Given the foregoing actions by the individual defendants within the course and scope of their duties as board members to Defendant Liquid, or as agents working at the behest

of a company which has been subsequently merged into Liquid, the company intentionally created or permitted a hostile work environment.

78.     As is more fully set forth above, the individual defendants, all of whom are current board members of Defendant Liquid, wouldn't have dared to speak to other male members in such an insulting and aggressive way as they did with Plaintiff, who was the only female board member of Liquid and, up until recently, the company's CEO.

79.     Such differential treatment of Plaintiff in terms, conditions, and privileges of employment establishes a direct violation by Defendant Liquid of N.Y. City Admin. Code, §8-107(1)(a)(3) or, in the alternative, establishes an indirect violation via the conduct of its wholly owned subsidiary, Leading Brands, which acted as Liquid's "alter ego."

80.     Plaintiff seeks compensatory damages of at least $1,311,690.75 against Defendant Liquid or an amount to be determined at trial, in addition to punitive damages totaling $9,181,835.25, or at an amount to be determined at trial.

## COUNT FIVE:

### VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, N.Y. CITY ADMIN. CODE §§ 8-101 – 8-131 BY DEFENDANT BREZER

81.     Plaintiff restates each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

82.     Given the foregoing actions by Defendant Brezer, including him demanding that Plaintiff sign off on compensation for others and his insulting e-mails and/or texts, Plaintiff maintains that he intentionally created a hostile work environment for her at Liquid.

83.     As is more fully set forth above, Defendant Brezer wouldn't have dared to speak to other male members in such an insulting and aggressive way as he did with Plaintiff, who was the only female board member of Liquid and, up until recently, the company's CEO.

84.     Such differential treatment of Plaintiff in terms, conditions, and privileges of employment establishes a violation by Defendant Brezer of N.Y. City Admin. Code, §8-107(1)(a)(3).

85.     Plaintiff seeks compensatory damages of at least $1,311,690.75, or an amount to be determined at trial, in addition to punitive damages totaling $9,181,835.25, or at an amount to be determined at trial.

## COUNT SIX:

**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, N.Y. CITY ADMIN. CODE §§ 8-101 – 8-131 BY DEFENDANT CRUZ**

86.     Plaintiff restates each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

87.     Given the foregoing actions by Defendant Cruz, including his insulting e-mails and/or texts, Plaintiff maintains that he intentionally created a hostile work environment for her at Liquid.

88.     As is more fully set forth above, Defendant Cruz wouldn't have dared to speak to other male members in such an insulting and aggressive way as he did with Plaintiff, who was the only female board member of Liquid and, up until recently, the company's CEO.

89.     Such differential treatment of Plaintiff in terms, conditions, and privileges of employment establishes a violation by Defendant Cruz of N.Y. City Admin. Code, §8-107(1)(a)(3).

90.     Plaintiff seeks compensatory damages of at least $1,311,690.75, or an amount to be determined at trial, in addition to punitive damages totaling $9,181,835.25, or at an amount to be determined at trial.

**COUNT SEVEN:**

**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, N.Y.
CITY ADMIN. CODE §§ 8-101 – 8-131 BY DEFENDANT JACKSON**

91.     Plaintiff restates each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

92.     Given the foregoing actions by Defendant Jackson, including his insulting e-mails and/or texts giving Plaintiff the ultimatum that she could only receive an office or a salary, but not both, all the while he approved of both for a male hire in Los Angeles, Plaintiff maintains that he intentionally created a hostile work environment for her at Liquid.

93.     As is more fully set forth above, Defendant Jackson wouldn't have dared to speak to other male members in such an insulting and aggressive way as he did with Plaintiff, who was the only female board member of Liquid and, up until recently, the company's CEO.

94.     Such differential treatment of Plaintiff in terms, conditions, and privileges of employment establishes a violation by Defendant Cruz of N.Y. City Admin. Code, §8-107(1)(a)(3).

95.     Plaintiff seeks compensatory damages of at least $1,311,690.75, or an amount to be determined at trial, in addition to punitive damages totaling $9,181,835.25, or at an amount to be determined at trial.

**COUNT EIGHT:**

**PROMISSORY ESTOPPEL**

96.     Plaintiff restates each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

97.     As more fully set forth above, Plaintiff was promised a 2018 compensation package in or about October 2017. This is precisely why Defendant Brezer hounded Plaintiff for a copy of the contract throughout October and November of 2017.

98.     The financial terms of the October 2017 informal promise are reflected in the 2018 Contract. In reasonable reliance on such financial terms and with the expectation that they would be honored, Plaintiff performed her CEO duties under the 2018 Contract. When Plaintiff sought payment for her services, Defendants never denied owing her monies under the 2018 Contract. Instead, Defendant Brezer merely said that, at the time, "[w]e literally have no money, check the account, done??" Plaintiff's purported termination without cause occurred later in or about May of 2018.

99.     As a result of the foregoing reasonable reliance, Plaintiff was injured in the amount of $1,269,772.09.

## COUNT NINE:

### UNJUST ENRICHMENT

100.    Plaintiff restates each and every allegation contained in the paragraphs above, as though fully cited in this paragraph.

101.    As a result of Plaintiff's services to Defendants in 2018, they were enriched. While they received the benefit of Plaintiff's services, including the negotiation of the *My Haunted House* project, Defendants didn't pay a dime of her 2018 compensation package. What is more, Defendants terminated Plaintiff without cause but avoided paying her the $1,000,000.00 severance payment.

102.    Consequently, Defendants were unjustly enriched in the amount of $1,269,772.09 in 2018.

**WHEREFORE**, Plaintiffs pray that the Court declare, adjudge and decree that:

1.      Defendant Liquid is liable to Plaintiffs individually and/or collectively for the foregoing 2017 Contract damages or an amount to be determined at trial;

2.      Defendant Liquid is liable to Plaintiff for her foregoing 2018 Contract damages or an amount to be determined at trial;

3.      The corporate veil of Defendant Liquid is pierced so that the individual Defendants, namely, Brezer, Cruz, and Jackon, be held personally liable for the foregoing contractual debts of Defendant Liquid to Plaintiff Five Zoo and Plaintiff given that the company was an alter ego of the individual defendants and/or that such veil be pierced so that Leading Brands, which is a minority shareholder of Defendant, is made liable for the debts of Defendant Liquid;

4.      Defendant Cruz is liable to Plaintiff for the foregoing compensatory and punitive damages resulting from his *per se* defamation or an amount to be determined at trial;

5.      The individual Defendants aided and abetted each other's harassment of and discriminatory practices under applicable New York City Human Rights Law against Plaintiff, making them jointly and severally liable to Plaintiff for the foregoing compensatory and punitive damages under the foregoing law;

6.      Defendants are liable to the Plaintiff for the foregoing 2018 promissory estoppel damage in the event that the Court finds that there was no 2018 Contract.

7.      Defendants are liable to the Plaintiff for the foregoing 2018 unjust enrichment damage in the event that the Court finds there was no 2018 Contract and that there is no claim for promissory estoppel.

8.      Plaintiffs recover their costs of this lawsuit, including reasonable attorneys' fees, in addition to pre and post judgment interest;

9.     Plaintiffs are granted such other, further, and different relief as may be deemed just and proper by the Court.

## DEMAND FOR JURY TRIAL

Defendant hereby demands a trial by jury

Dated: January 3, 2019
Los Angeles, California

_____
Ryan E. Long, Esq. (RL-1974)
Long & Associates PLLC
135 West 27ᵗʰ Street – 8ᵗʰ Floor
New York, New York 10001
Telephone: (212) 360 – 0394
Facsimile: (646) 612 – 7911
E-mail: rlong@landapllc.com

*Attorneys for Plaintiffs Krysanne Katsoolis and Five Zoo Concepts & Design, Inc*.