UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
                                                           :
KRYSANNE KATSOOLIS, ET AL.,                                :
                                          Plaintiffs,      :       18 Civ. 9382 (LGS)
                                                           :
                     -against-                             :       **OPINION AND ORDER**
                                                           :
LIQUID MEDIA GROUP, LTD., ET AL.,                          :
                                          Defendants.      :
---------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__9/27/2019__

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Krysanne Katsoolis and Five Zoo Concepts & Design Inc. ("Five Zoo") bring this action against Canadian media company Liquid Media Group, Ltd. ("Liquid") and three individual Liquid executives, Daniel Cruz, Charles Brezer and Joshua Jackson. Katsoolis was the Chief Executive Officer ("CEO"), President and a Director of Liquid's wholly-owned subsidiary "Old Liquid," but allegedly was harassed and terminated without receiving her total compensation. Plaintiffs assert claims for breach of contract, unjust enrichment, promissory estoppel, defamation and violations of the New York City Human Rights Law ("NYCHRL").

Defendants move to dismiss the Amended Complaint ("Complaint") for failure to state a claim, lack of personal jurisdiction and under the *forum non conveniens* doctrine. Plaintiffs also move to file a Second Amended Complaint to add Old Liquid, now officially named Liquid Media Group (Canada), Ltd., as a defendant. For the reasons below, the motion to dismiss for failure to state a claim is granted in part and denied in part. The motion to dismiss for lack of personal jurisdiction and *forum non conveniens* is denied. The motion to replead is granted.

I.      **BACKGROUND**

The following facts are taken from the Complaint and exhibits attached to and referenced in the Complaint, and are accepted as true for purposes of this motion only. *See TCA Television*

*Corp. v. McCollum*, 839 F.3d 168, 172 (2d Cir. 2016); *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

Plaintiffs worked with Defendants and non-party Old Liquid from 2014 until 2018. The relevant period of this dispute is 2017 through 2018. An experienced media executive, and director of Plaintiff Five Zoo, Katsoolis helped Defendants procure media projects and investors. Plaintiffs are based in New York City, and all Defendants, except Defendant Jackson, are based in Vancouver, Canada. Defendant Jackson is based in California. Defendant Liquid and non-party Old Liquid are Canadian corporations, each with its principal place of business in Vancouver, Canada.

The parties primarily worked together remotely. In 2017 and 2018, Katsoolis took nearly daily calls and sent thousands of e-mails to Defendants from her New York City base. The parties met in New York City in July 2017, October 2017 and March 2018. The October 2017 meeting was a financing pitch to Weiser Capital, which Katsoolis and Defendants Cruz and Jackson attended. All individual Defendants met with Katsoolis at the March 2018 meeting. Although Defendant Liquid had maintained an office suite in New York City since January 2017, Katsoolis asked Defendant Jackson for a New York office in December 2017. Defendant Jackson gave her the ultimatum of receiving either an office or her salary.

Two agreements govern the parties' working arrangements in 2017 and 2018. The January 1, 2017, "Independent Contractor Agreement" (the "2017 Contract"), is between Liquid Media Group, Ltd. (as explained below, Old Liquid) and "Katsoolis on loan out from Five Zoo C&D Inc," defined as the "Contractor." Defendant Brezer, on behalf of Old Liquid, and Plaintiff, on behalf of Five Zoo, signed the 2017 Contract. Under the 2017 Contract, Plaintiff agreed to serve, from January 1 to December 31, 2017, as CEO and President of Old Liquid and

as a Member of the Board, in exchange for $10,000 per month "plus GST [the Canadian Goods and Services Tax]."  A choice-of-law provision states that British Columbia ("B.C.") law governs the contract.  Katsoolis' work in 2017 included bringing in $460,000 of financing from four investors.

In October and November 2017, Defendant Brezer "hounded" Plaintiff for a 2018 employment agreement.  Around October 2017, Plaintiff and the individual Defendants reached an oral agreement (the "2018 Contract").  Katsoolis prepared and sent a written draft of the 2018 Contract to Defendant Brezer around January 1, 2018, but the draft was never executed.  The draft states that the 2018 Contract is between "Liquid Media Group, Ltd." (as explained below, either Defendant Liquid or Old Liquid) and Katsoolis.  Katsoolis would remain in her positions until terminated, and receive a $400,000 base annual salary, a discretionary bonus, a signing bonus of "400,000 shares upon completion of the contemplated public merger," and severance pay of $1 million if her employment was terminated other than for "just and sufficient cause."

Around this time, Defendant Liquid and non-party Old Liquid entered a reverse merger. On January 14, 2018, Old Liquid became the wholly-owned subsidiary of Defendant Liquid. Defendant Liquid, formerly known as "Leading Brands, Inc.," changed its name to "Liquid Media Group, Ltd."  Old Liquid, which had been named "Liquid Media Group, Ltd.," became known as "Liquid Media Group (Canada), Ltd."  Because the 2017 Contract precedes the merger and name change, "Liquid Media Group, Ltd." in the 2017 Contract refers to Old Liquid.  It is unclear whether "Liquid Media Group, Ltd." in the 2018 Contract refers to Old Liquid or Defendant Liquid, and on whose behalf the individual Defendants were acting when they entered into the oral agreement.

Old Liquid and Defendant Liquid have substantially overlapping Board membership, and all individual Defendants serve on both Boards.[1] Old Liquid is undercapitalized, because its assets were transferred to Defendant Liquid and the individual Defendants, purportedly to avoid paying Plaintiffs her outstanding 2017 and 2018 compensation. Meanwhile, Defendant Liquid made $4 million of acquisitions, including buying a 51% stake in Majesco Entertainment Company.

Katsoolis worked with Defendants through August 2018. In 2018, her work included signing the Old Liquid acquisition agreement filed with the Securities and Exchange Commission ("SEC"), communicating with Defendant Brezer about Liquid shares issues, negotiating a media project in July 2018 and finalizing a settlement with a third-party in August 2018.

But the relationship between Katsoolis and Defendants was deteriorating throughout 2018. Katsoolis was subject to increasing marginalization. In March 2018, she was removed from all correspondence and group e-mails at Liquid. On May 28, 2018, a press release announced that she was stepping down as CEO. Katsoolis finally resigned as a board member on August 24, 2018.

The individual Defendants also harassed Katsoolis. On an April 6, 2018, call with a shareholder in New York, Defendant Cruz, the Chief Financial Officer and the Vice President of Finance, falsely claimed that Katsoolis was having an affair with a Liquid investor, which caused her to "go[] rogue" and enter into an unauthorized Liquid contract with him. In an April 2018 e-mail, on which Defendants Brezer and Jackson were copied, Defendant Cruz said, "Please don't

---

[1] When discussing these allegations, the Complaint, ¶¶ 53-59, refers to the entities by their pre-acquisition names, *i.e.* Defendant Liquid is "Leading Brands" and Old Liquid is "Liquid."

bore me/fellow members of Liquid with your twisted undocumented statements." In a June 2018, text exchange regarding alleged issues with Katsoolis' work product, Defendant Brezer said, the "work isn't done right. My patience is done" and "I'm done with this."

Katsoolis is still owed compensation and reimbursement for her work in 2017 and 2018. According to Liquid's auditor, Katsoolis is owed $41,918.66 for 2017. Because she worked through August 2018, she is owed a pro-rated annual salary of approximately $266,666, plus the 400,000 shares signing bonus, under the 2018 Contract draft.

## II. DISCUSSION

### A. Sufficiency of Claims

The 2017 Contract and NYCHRL claims are dismissed. The 2018 Contract, unjust enrichment, promissory estoppel and defamation claims are sufficiently pleaded under Federal Rule of Civil Procedure 12(b)(6).

#### 1. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal

conclusions," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

### 2. Choice of Law

All claims arise under New York law, except the breach of contract claims and veil piercing issue, which are governed by B.C. law. Where the "parties' briefs assume that [a given] state law governs . . . such implied consent . . . is sufficient to establish the applicable choice of law." *See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017). Here, the parties have assumed that B.C. law applies to the contract claims and veil piercing issue. The 2017 Contract also has an express choice-of-law provision requiring that it be interpreted under B.C. law. *See AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) (A "federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state." New York law "generally enforces choice-of-law clauses.") (internal quotations marks and citations omitted). The parties assume that New York law applies to the remaining claims, including the unjust enrichment and promissory estoppel claims pleaded in the alternative to the contract claims. The analysis here proceeds according to the parties' assumed choice of law.

### 3. Veil Piercing

The Complaint sufficiently pleads that Defendant Liquid is an alter ego of its non-party subsidiary Old Liquid, as of the January 2018 reverse merger. Thus, any claims for which Old Liquid may be liable can be imputed to Defendant Liquid.

Under B.C. law, according to declarations of B.C.-admitted attorneys, a parent ordinarily is not liable for its subsidiary's debts.[2] *See* Declaration of Stephen Jackson, dated February 4,

---

[2] In ascertaining the content of foreign law, "'the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal

2019, Dkt. No. 53 ("Jackson Decl."), ¶ 8; Declaration of John Fiddick, dated February 17, 2019, Dkt. No. 61, ¶ 5.  But in extraordinary circumstances, the liability of a subsidiary is imputed to its parent under the corporate veil piercing doctrine.  Jackson Decl. ¶ 8.  Veil piercing requires alleging that "(1) there is complete control of the subsidiary, such that the subsidiary is the 'mere puppet' of the parent corporation, *and* (2) the subsidiary was incorporated for a fraudulent or improper purpose or used by the parent as a shell for improper activity."  *See id.* (emphasis added).

The Complaint sufficiently pleads both elements.  It alleges that Old Liquid was a "puppet" of Liquid in 2018 -- *i.e.,* Old Liquid was undercapitalized, its Board did not meet or observe corporate formalities, and the same individuals that controlled Liquid controlled Old Liquid.  Although the Complaint does not allege why Defendant Liquid was incorporated or the reverse merger was done, it alleges that Defendant Liquid used Old Liquid for improper activity after the merger.  Specifically, Defendant Liquid intentionally undercapitalized Old Liquid to avoid paying Plaintiffs their outstanding compensation.  When Katsoolis sought payment for her 2018 work, Defendant Brezer told her, "[w]e literally have no money, check the account[.]"  At the same time, Defendant Liquid represented to the public that it was sufficiently liquid to make $4 million of acquisitions, including a 51% stake in Majesco Entertainment Company.  These allegations are sufficient to sustain the 2018 Contract claim and related 2018 quasi-contract claims against Defendant Liquid, regardless of whether Old Liquid or Defendant Liquid is the proper counterparty to the 2018 Contract or quasi-contract.

---

Rules of Evidence.  The court's determination must be treated as a ruling on a question of law.'"  *Ozaltin v. Ozaltin*, 708 F.3d 355, 368 (2d Cir. 2013) (quoting Fed. R. Civ. P. 44.1).  The Court relies on the Declaration of Stephen Jackson, filed by Defendants, and the Declaration of John Fiddick, filed by Plaintiffs, to determine B.C. law.

### 4. Breach of Contract

Under B.C. law, breach of contract requires: (1) a valid and enforceable contract exists, (2) Plaintiff performed her obligations thereunder, (3) Defendants breached their obligations and (4) Plaintiff suffered damages. Jackson Decl. ¶¶ 2, 4. The Complaint fails to plead breach of the 2017 Contract, but sufficiently pleads breach of the 2018 Contract.

#### a. 2017 Contract Claim

The only party liable to Plaintiffs under the 2017 Contract is non-party Old Liquid, the named counterparty. Although the Complaint proceeds on an alter ego theory against Liquid, it pleads no facts that Liquid was an alter ego before the January 2018 reverse merger. The 2017 Contract claim is dismissed, without prejudice to renewal, if repleaded against Old Liquid.

#### b. 2018 Contract Claim

The 2018 Contract claim may proceed against Defendant Liquid on a theory of direct, and not solely alter ego, liability. The Complaint adequately pleads the required elements against Defendant Liquid: in October 2017, Plaintiffs and the individual defendants, on behalf of Defendant Liquid, orally agreed to the 2018 Contract; Katsoolis continued to serve as CEO and President of "Liquid Media Group, Ltd.," which in 2018 referred to Defendant Liquid; she has not received any compensation for her 2018 work, and therefore was damaged. Even if Old Liquid is the counterparty to the 2018 Contract, the Complaint sufficiently pleads alter ego liability against Defendant Liquid.

### 5. Promissory Estoppel

The Complaint plausibly alleges a promissory estoppel claim against Defendant Liquid. Because the existence of the 2018 Contract may be disproven, this claim may proceed in the alternative to the 2018 Contract claim.

Under New York law, "[t]o establish a claim of promissory estoppel, a plaintiff must demonstrate that the defendant made a *clear and unambiguous promise*, upon which the plaintiff reasonably relied, to its detriment." *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 202 (2d Cir. 2019) (internal quotation marks omitted) (emphasis added) (applying New York law). A valid written agreement "precludes recovery under . . . promissory estoppel" where the agreement concerns the "same subject matter" as the promissory estoppel claim. *Hoeg Corp. v. Peebles Corp.*, 60 N.Y.S.3d 259, 262 (2d Dep't 2017); *accord Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 816 (2d Cir. 2014) (stating that, in general, under New York law, "a party may not maintain a promissory estoppel claim where the promises on which the claim is based are expressly contradicted by a later written agreement covering the same subject matter") (internal quotation marks omitted). The 2018 Contract draft evinces a "clear and unambiguous promise" that "Liquid" would pay Katsoolis for her continued service as an executive.

The promissory estoppel claim is dismissed as to all individual Defendants. The Complaint does not allege facts that these defendants promised that they would personally compensate Plaintiff for her work. The draft 2018 Contract promises only that the "Liquid" entity would pay. To extent the individual Defendants were involved in negotiating or performing the 2018 Contract, they were acting only as agents of "Liquid Media Group, Ltd." "Under New York law, where an individual acts in his capacity as an agent of a disclosed principal, the agent 'will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Seguros Nuevo Mundo S.A. v. Trousdale*, 670 F. App'x 4, 5 (2d Cir. 2016) (summary order) (quoting *Salzman Sign Co. v. Beck*, 176 N.E.2d 74, 76 (1961)); *accord Braun v. CMGI, Inc.,* 99 Civ. 12328, 2001 WL 921170, at *12 (S.D.N.Y. Aug. 14, 2001), *aff'd*, 64 F.

App'x 301, 303 (2d Cir. 2003) (granting summary judgment on the promissory estoppel claim to the defendant, where there was no clear and explicit evidence of defendant's intention to be personally bound); *It's All Good, Inc. v. Intl. Creative Mgt., Inc*., No. 94 Civ. 8459, 1995 WL 622511, at *3 (S.D.N.Y. Oct. 24, 1995) (dismissing breach of contract and promissory estoppel claims against defendant-agents where the complaint did not allege that they intended to be personally bound).

### 6. Unjust Enrichment

The Complaint adequately pleads an unjust enrichment claim against Defendant Liquid for Plaintiffs' unpaid work in 2018. To state this claim, a plaintiff must allege that "(1) the other party was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 31 N.Y.S.3d 441, 455 (N.Y. 2018) (quotation marks and brackets omitted). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

The Complaint alleges that, after the 2017 Contract expired on December 31, 2017, Plaintiffs continued to work for Defendant Liquid (and non-party Old Liquid) until August 2018. The Complaint provides specific examples of Plaintiffs' projects, meetings, fundraising and an SEC filing that Katsoolis signed, and alleges that she had voluminous e-mail and phone communication with Defendants in 2018. Plaintiffs received no compensation for this work. Because the existence of the 2018 Contract may be disproven, this unjust enrichment claim may proceed in the alternative.

Although the Complaint alleges that Defendants were enriched by Plaintiffs' services in 2018, it contains no factual allegations that the individual defendants were personally enriched, as opposed to in their capacities as "Liquid" directors and executives. The Complaint therefore states a claim against Defendant Liquid only.

### 7. Defamation

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name. Generally, spoken defamatory words are slander; written defamatory words are libel." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (internal quotation marks and citation omitted). Because the Complaint does not allege that the relevant statement was written, Plaintiffs' defamation claim is treated as a slander claim.

Under New York law, the elements of slander are: "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Albert*, 239 F.3d at 265-66 (citing *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)) (internal quotation marks, citation and footnote omitted). Slander per se includes statements that "tend to injure the plaintiff in his or her trade, business or profession." *Id.* at 271. The applicable level of fault is either negligence or actual malice depending on the status of the slandered party. *Cf. Celle v. Filipino Reporter Enterprises Inc.,* 209 F.3d 163, 176 (2d Cir 2000) (reciting elements of libel).

The defamation claim against Defendant Cruz is sufficiently pleaded. The Complaint alleges that Defendant Cruz falsely told a shareholder during a phone conversation that Katsoolis was having an affair with a Liquid investor, which motivated her to approve an unauthorized agreement with the investor on Liquid's behalf. The Complaint alleges, however, that the

statement is demonstrably false. Plaintiff had the authority to deal with the counterparty. The allegations imply, although an amended pleading may clarify, that Defendant Cruz knew or should have known that the statement was false. Because Defendant Cruz was the CFO, VP of Finance and a member of the Liquid board, and frequently communicated with Plaintiffs, he knew that Katsoolis had the authority to approve the agreement. Cruz's statement impugns Katsoolis' professionalism, judgment and character in her professional context, which supports slander per se.

### 8. New York City Human Rights Law

The NYCHRL claims against all Defendants are dismissed.[3] N.Y. Administrative Code § 8-107(1)(a)(3) provides that "[i]t shall be an unlawful discriminatory practice [f]or an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." A § 8-107(1)(a)(3) claim requires that a plaintiff allege "she has been treated less well than other employees *because of her gender*" and that "the conduct is caused by a discriminatory motive." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (emphasis added) (internal quotations omitted); *accord Henderson v. Physician Affiliate Grp. of New York P.C.,* No. 18 Civ. 3430, 2019 WL 3778504, at *4 (S.D.N.Y. Aug. 12, 2019) ("[T]o survive a motion to dismiss under all of the provisions at issue in this case [including § 8-107(1)(a)(3)], the facts alleged must provide at least minimal support for the

---

[3] NYCHRL claims may be brought against defendants whose misconduct impacts a party in New York City like Katsoolis, even if the defendants are not physically present in New York themselves. *See, e.g., Chau v. Donovan*, 357 F. Supp. 3d 276, 283-84 (S.D.N.Y. 2019) ("Even where the discriminatory conduct occurs outside the geographical bounds of New York City, courts have found that the impact requirement [of the NYCHRL] is satisfied if the plaintiff alleges that the conduct has affected the terms and conditions of plaintiff's employment within the city.") (internal quotation marks and citation omitted).

proposition that the employer was motivated by discriminatory intent.") (internal quotations omitted). At the motion to dismiss stage, minimum discriminatory intent may be pleaded by alleging that an otherwise similarly situated employee -- or "comparator," who shares the plaintiff's position, but not her protected characteristic -- was treated materially differently. *See Henderson*, 2019 WL 3778504, at *4.

Although the Complaint alleges that Katsoolis was subject to hostile remarks and treatment by all individual Defendants, it does not allege these actions were borne out of a discriminatory motive. The Complaint baldly states that Defendants would not treat male employees the same way as they treated Katsoolis. It provides no specific examples of differential treatment toward comparators or any gender-based comments or actions evincing discriminatory motive. Without a minimum showing that Defendants' treatment of Katsoolis was due to *hostility toward her gender*, as opposed to Defendants' malevolence, an ongoing conflict among the parties, a targeted dislike of Katsoolis as an individual, or any number of other explanations, the NYCHRL claims cannot proceed.

### B. Personal Jurisdiction

Personal jurisdiction exists over Defendant Liquid for the surviving contract, promissory estoppel, unjust enrichment claims, and over Defendant Cruz for the defamation claim.

#### 1. Legal Standard

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff bears the burden of establishing personal jurisdiction." *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *accord GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18 Civ. 4945, 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019). Where, as here, "a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need

only make a prima facie showing." *MacDermid*, 702 F.3d at 727; *see also Charles Schwab Corp. v Bank of Am. Corp.*, 883 F3d 68, 81 (2d Cir 2018). This means that a complaint avers "facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (internal quotation marks omitted). Courts will not resolve "argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted); *accord E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*, No. 18 Civ. 3217, 2018 WL 6528496, at *3 (S.D.N.Y. Dec. 12, 2018).

Personal jurisdiction may be either general or specific. *See Licci ex rel. Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 59 (2d Cir. 2012). The parties here dispute only whether specific jurisdiction is established. Specific jurisdiction requires that a defendant has been properly served, and that the service comports with the law of the forum state and with constitutional due process. *See id.* at 624; *Licci*, 673 F.3d at 59-60. New York's long-arm statute, CPLR § 302(a), permits jurisdiction over foreign defendants when, as relevant here, the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR § 302(a)(1).[4] "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction," *i.e.* "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

---

[4] This is the only provision relevant to the surviving claims. The other provisions are expressly inapplicable. Though § 302(a)(2)-(3) governs most tort claims, the provision expressly excludes defamation claims, the only remaining tort claim.

The parties dispute whether Plaintiffs have established that the New York long-arm statute, CPLR § 302(a)(1), is satisfied for specific jurisdiction. Defendants do not make any due process objections.

### 2. Transacting Business in New York

To satisfy the "transacts any business" prong under CPLR § 302(a)(1), a plaintiff must show that the defendant engages in "purposeful activity" in the state, *i.e.* it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines*, 490 F.3d at 246.

Plaintiffs make that showing here. The Complaint alleges that Defendant Liquid and non-party Old Liquid relied on Plaintiffs to conduct business in the New York market. Their remote collaboration with Plaintiffs based in New York was not incidental, but a purposeful strategy to take advantage of the New York market. *See JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, 2019 WL 2578306, at *6-8 (S.D.N.Y. June 24, 2019) (suggesting that, had a Complaint alleged that Defendants who were located abroad purposefully sought to work with Plaintiff remotely, from Plaintiff's New York base, then specific jurisdiction is established). Katsoolis was an experienced media executive who developed business and raised financing in and around New York. For example, she negotiated the *My Haunted House* project and a settlement agreement in 2018. Liquid had shareholders in New York with whom Katsoolis and Defendants maintained relationships. She helped pitch a New York investor in person. Defendant Cruz allegedly defamed Katsoolis on a call with a New York shareholder. Defendant Liquid has furthermore maintained a New York office since early 2017, although it declined to

provide Katsoolis with office space.[5]  These facts show that the Liquid entities were purposefully and actively transacting business in New York within meaning of the long-arm statute.

Just as Old Liquid and Defendant Liquid transacted business in New York, so too did Defendant Cruz, as the CFO, VP of Finance and a board member.  The Complaint alleges that he traveled to New York on Liquid business in July and October 2017 and in March 2018.  He solicited and maintained relationships with investors in New York.

Defendants are correct that "courts have consistently declined to sustain § 302(a)(1) jurisdiction *solely* on the basis of defendant's communications from another locale with a party in New York," unless the center of gravity of the business transaction is in New York.  *See Broad Horizons, Inc. v. Cent. Crude Ltd.*, No. 94 Civ. 1593, 1994 WL 623075, at *2 (S.D.N.Y. Nov. 9, 1994) (emphasis added).  But this precedent is inapplicable.  As discussed, specific jurisdictions is not based solely on Katsoolis' communications from New York.  Defendant Liquid and non-party Old Liquid did business in New York by relying on Plaintiffs as representatives in the New York region.

### 3.  Articulable Nexus

Section 302(a)(1) furthermore requires showing an "articulable nexus, or a substantial relationship, between the claim[s] asserted and the actions that occurred in New York."  *Best Van Lines*, 490 F.3d at 246.  This nexus exists for all surviving claims.

The alleged contracts all directly pertain to and govern Defendant Liquid's New York business activity.  In spite of these agreements, Defendants have failed to pay Plaintiffs.  The "place of performance of a contract" -- here, substantially New York, with payment flowing

---

[5] The Complaint is not clear regarding whether Old Liquid also maintained this office space. Plaintiffs may clarify in their Second Amended Complaint.

from Canada to New York -- is an important factor in the § 302(a)(1) analysis. *See Art Assure Ltd. v. Artmentum GmbH*, No. 14-3756, 2014 WL 5757545, at *3.

The defamation claim is also sufficiently related to Defendant Cruz's New York business activity. "New York courts have found jurisdiction in cases where the defendants' out-of-state conduct involved defamatory statements projected into New York and targeting New Yorkers, but only where the conduct also included something more." *Best Van Lines*, 490 F.3d at 249 (collecting cases). That "something more" is satisfied here: as discussed, Katsoolis and the individual Defendants raised money from New York investors. It was on a call with one of these investors that Defendant Cruz defamed Katsoolis, a New York media executive. His comment discredited her professionally and obstructed her ability to work with this investor, the investor's colleagues and any other professionals in the New York media community who learned of Defendant Cruz's statement.

The cases that Defendants cite to the contrary are inapposite. In each one, the relevant defamatory statement only incidentally reached New York, and was not bound up in ongoing New York business activity, as the statement here is. *See Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012) (defamatory statements posted on YouTube, reachable anywhere with internet, did not have sufficient nexus to New York); *Best Van Lines*, 490 F.3d at 253 (defendant's alleged defamatory comments on a website did not "suggest that they were purposefully directed to New Yorkers rather than a nationwide audience"); *Cantor Fitzgerald, L.P. v. Peaslee*, No. 94 Civ. 9184, 1995 WL 217500, at *2 (S.D.N.Y. Apr. 12, 1995) (no nexus where defamatory statement was made incidentally in New York during a trip to the area for a wedding).

### C.     Forum Non Conveniens

"[W]hen a defendant moves to dismiss on the ground of *forum non conveniens*, courts assess: (1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." *Fasano v. Yu Yu*, 921 F3d 333, 335 (2d Cir. 2019); *accord Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir.2001) (en banc). The "[p]rivate interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) issues concerning the enforceability of a judgment; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive[.] [The] [p]ublic interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having controversies decided at home; (3) the interest in having a trial in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *United Feature Syndicate v. Miller Features Syndicate, Inc.*,, 216 F. Supp. 2d 198, 207 (S.D.N.Y. 2002) (*citing Murray v. British Broadcasting Corp*., 81 F.3d 287, 294 (2d Cir.1996)).

The motion to dismiss for *forum non conveniens* is denied. Defendants argue that B.C. is the proper forum. As an initial matter, Plaintiffs' choice of their New York home forum is accorded significant deference. Only if Defendants show that their alternative forum is adequate and that the balance of public and private factors *substantially* weighs towards the alternative forum will Plaintiffs' choice be disrupted. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1981); *accord Hyundai Merch. Marine Co. v. Mitsubishi Heavy Indus., Ltd.,* No. 14 Civ. 7965,

2015 WL 7758876, at *2 (S.D.N.Y. Dec. 1, 2015). Assuming without deciding that B.C. is adequate, Defendants have failed to show that the balance of public and private factors significantly favor B.C. over New York. *See Iragorri*, 274 F.3d at 71.

Regarding the private factors, although Defendants argue that B.C. is more convenient because Defendants and their business records are based there, a substantial portion of this dispute is based on Defendants' and Plaintiffs' remote working relationship. Presumably much of the relevant evidence of their business activity and correspondence is already in electronic form, and accessible from either forum. While B.C. is more convenient for Defendants Liquid and Cruz, New York is substantially more convenient for Plaintiffs. Both the Federal Rules of Civil Procedure and B.C. law, according to Defendants, provide procedural safeguards for effective legal process and discovery. Furthermore, contrary to Defendants' suggestion, Canadian courts do generally enforce U.S. court judgments. *See Chevron Corp. v. Yaiguaje*, [2015] S.C.R. 69 (Can.). The private factors are therefore neutral.

Regarding the public factors, all are neutral or favor a New York forum. Although one surviving contract claim arises under Canadian law, the remaining three claims all arise under New York law. The Second Circuit has warned that a *forum non conveniens* dismissal is not appropriate to avoid the application of foreign law: "[W]e must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 68 (2d Cir. 1981); *accord Shtofmakher v. David*, No. 14 Civ. 6934, 2015 WL 5148832, at *4 (S.D.N.Y. Aug. 17, 2015); *United Feature Syndicate*, 216 F. Supp. 2d at 209 (movant "failed to demonstrate that application of Canadian law would be unusually difficult or burdensome to this Court.") Defendants also are incorrect that a New York jury would have no interest in this case. The

dispute pertains to an individual and corporate plaintiff, which are both residents of New York, who conduct business in New York, with New York counterparties.

### D. Motion for Leave to Amend

Plaintiffs have moved for leave to file a Second Amended Complaint ("SAC") to add Old Liquid -- now officially Liquid Media Group (Canada), Ltd. -- as a defendant. Leave to amend is granted. Plaintiffs may seek leave to further amend if they can allege facts that cure other deficiencies discussed in this opinion.

The Court may "freely give leave [to amend] when justice so requires" unless amendment is futile. Fed. R. Civ. P. 15(a)(2). Addition of Old Liquid is not futile. The 2017 Contract and 2018 Contract, promissory estoppel and unjust enrichment claims can be sufficiently pleaded against Old Liquid.

The 2017 Contract is between Old Liquid and Plaintiffs. The Complaint alleges that Katsoolis performed under the 2017 Contract, but is still owed $41,918.66. Defendants' auditor documents, attached to the Complaint, attest to this amount. These allegations are sufficient against Old Liquid, the 2017 Contract's express counterparty.

Old Liquid is also a plausible counterparty to the oral 2018 Contract or, in the alternative, the quasi-contracts arising under the promissory estoppel and unjust enrichment theories. The 2018 Contract purportedly was a continuation of the 2017 Contract to which Old Liquid was a party. The oral agreement was formed while Old Liquid was still known as "Liquid Media Group, Ltd.," the entity named in the 2018 Contract written draft. Katsoolis performed under the 2018 Contract but received no compensation.

For the reasons that the Complaint sufficiently establishes personal jurisdiction over Defendant Liquid for the contract and quasi-contract claims, it does so likewise over Old Liquid.

Plaintiffs may proceed in either of two ways: they may (1) file a Second Amended Complaint ("SAC") within two weeks of this opinion, adding Old Liquid as a defendant to the 2017 Contract claim, the 2018 Contract claim, the promissory estoppel and unjust enrichment claims, but making no other changes; or (2) file a letter, not to exceed four pages, within four weeks of this opinion, proposing any changes that they would like to make beside adding Old Liquid as a defendant. Plaintiffs' letter shall state how these changes cure pleading deficiencies identified in this opinion. For either course, Plaintiffs shall file an accompanying redline of the SAC, showing changes from the currently operative Amended Complaint.

If Plaintiffs choose the first course, Defendants shall file an Answer within the time provided in the Federal Rules of Civil Procedure. If Plaintiffs choose the second course, Defendants may file an opposition letter, not to exceed four pages, within one week of Plaintiffs' letter.

## III. CONCLUSION

For the foregoing reasons, the motions are DENIED in part and GRANTED in part. The motion to dismiss for lack of personal jurisdiction and *forum non conveniens* is denied. Plaintiffs' motion to add Old Liquid as a defendant is granted. Plaintiffs may seek leave to amend as set forth above. The motion to dismiss for failure to state a claim is granted as to (1) Count One (the 2017 breach of contract claim), (2) Counts Four Through Seven (the New York City Human Rights Law claims) and (3) Defendants Brezer and Jackson, as to all claims. The motion is denied as to the following surviving claims:

- Count Two (2018 breach of contract) against Defendant Liquid;

- Count Three (defamation) against Defendant Cruz;

- Count Eight (promissory estoppel) against Defendant Liquid;

- Count Nine (unjust enrichment) against Defendant Liquid.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 50 and 88.

Dated: September 27, 2019
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**